1832.

Grimstone

v.

Carter.

---

GRIMSTONE vs. CARTER and others.

Upon a motion made to dissolve an injunction upon bill and answer, every allegation positively sworn to in the bill, and which is not substantially denied in the answer upon the defendant's own knowledge, must be taken as true.

If the purchaser of real property knows that a person other than the vendor is in the actual possession thereof at the time of his purchase, or before he has paid the purchase money and obtained the legal title, he cannot protect himself as a bona fide purchaser, against the equitable rights of the person in possession, of whom he made no inquiries as to the nature of that possession.

Where two persons have equal equities, and neither has the legal title, the prior equity must prevail ; and the one who has the subsequent equity will not be permitted to defeat the right of the other by obtaining a conveyance of the legal estate after he has notice of such prior equity.

There is no difference in principle between a purchaser in good faith, under the recording act, and a bona fide purchaser, as recognized by the decisions of courts of equity in other cases.

Where an absolute deed is given, but the same is accompanied by a written defeasance, contained in a separate instrument, showing that the conveyance was only intended as a mortgage, the deed and defeasance must both be recorded in the book of mortgages to protect the holder of such security against the claims of subsequent bona fide purchasers from the mortgagor.

THIS was an appeal from a decision of the vice chancellor of the eighth circuit, dissolving an injunction. The facts of the case as they appeared by the bill and answer, were substantially as follows : On the 5th of July, 1830, the complainant was the owner of lot No. 54, in Brighton, containing

August 27.

210 acres, and also of another small lot of land in the same town containing about nine acres ; upon the first of which lots there were three mortgages, amounting in the whole to about $1700. To obtain the means of satisfying these mortgages the complainant agreed to convey the whole of both lots to the defendant, Levi Carter, who agreed to pay off the mortgages. Carter also agreed to re-convey to the complainant the nine acre lot whenever he should be requested so to do ; and also to re-convey the north half of lot No. 54, upon receiving the balance of the mortgage monies paid by him, after deducting therefrom $1600 and interest. The complainant accordingly gave to Carter a warranty deed of both lots, which was duly recorded, on the 9th of July, 1830 ; and Carter gave him a written agreement to pay off the mortgages, and to give him a re-conveyance of the nine acres, and of the north half of lot No. 54, as before mentioned. The complainant thereupon continued in possession of the north half of the lot No. 54, and Carter took possession of the south half. In May, 1813, Carter conveyed the whole of that lot to the defendants Seymour and Wells, who paid a full consideration therefor, supposing they were obtaining a good title ; they having first searched the records and found a regular chain of title to Carter and that there were no recorded incumbrances thereon. But previous to the execution of the conveyance to them, and before the payment of the consideration for their purchase, they were informed by Carter that the complainant was living on the north part of the lot ; and the possession of that half of the lot was not to be delivered to the purchasers, by Carter, until the first of April thereafter. The defendants Seymour and Wells, supposing from the complainant's conveyance that he was only a tenant at sufferance to Carter, made no particular inquiries as to the terms of his possession ; and the complainant was not informed that they were about purchasing the property. But when they called upon him afterwards, and informed him of their purchase, he stated to them that Carter had done wrong ; and told them of the agreement to re-convey the north half to himself.

The following is the opinion of the Vice Chancellor:

GARDNER, V. C.   For the purposes of this motion it must be conceded, that the complainant was in the actual possession of the north half of the lot of 210 acres conveyed by him to Carter, as mortgagor, and that this possession was known to Wells and Seymour before the payment of the purchase money, although after the execution and registry of the deed from Carter.   It is an established principle that to support the defence of a purchaser for a valuable consideration without notice, the answer must aver not only that the purchaser had not notice at the time of the execution of the deed, but that the purchase money was paid before notice.   (7 *John. Ch. R.* 68.   1 *Hop. Rep.* 48.)   Wells and Seymour are therefore purchasers with actual notice of the possession of the complainant, but not of the precise extent, nor of the character of his claims to the land in controversy.   The single question then presented by the pleadings is whether, under the circumstances of this case, this notice is sufficient to oust these defendants of their defence as bona fide purchasers.   Independent of the registry acts, actual notice of the possession of the complainant would, beyond doubt, have been sufficient to put the defendants upon enquiry, and would at least have been equivalent to constructive notice of any claim legal or equitable to the land in question.   (16 *Vesey,* 249.   5 *John. Ch. Rep.* 29.   1 *Merivale,* 282.   2 *Vesey,* 437.   13 *Id.* 118.   2 *Paige's Rep.* 300.)

Whether the notice in question is equivalent to notice through the medium of the county records, is another and very different question.   The notice, say the court, in *Dey v. Dunham,* (2 *John. Ch. Rep.* 190,) that is to break in upon the registry acts must be such as with the attending circumstances will affect the party with fraud.   Notice to put a party on enquiry is not sufficient.   The chancellor thought in that case that no fraud was imputable to the plaintiff, although his deed gave him express notice of the existence of the mortgage, but not of the sum secured by it.   His decision was reversed by the court of errors upon this ground, but the principles assumed in that decision were not questioned.   On the contrary, the general rule, upon the subject of notice, established in

*Hine* v. *Dodd,* (2 *Atk.* 275,) and *Jotland* v. *Stainbridge,* (3 *Vesey, jun.* 478,) was expressly recognized by Platt, J. who delivered the opinion of the court. In *Jackson* v. *Van Valkenberg,* (8 *Cowen,* 264,) the subject of notice was again discussed, and the authorities reviewed. The opinion of Chancellor Kent, in *Dey* v. *Dunham,* was quoted with approbation, and the principle deduced from the authorities is summed up in this: that a second conveyance will be regarded as bona fide, unless tainted with fraud ; that express notice of a prior lien is, per se, evidence of fraud ; but that constructive notice alone is not sufficient to establish such an imputation. (8 *Cow.* 264.)

I have been able to discover no case in our own courts which is at all in conflict with those above cited. *Governeur* v. *Lynch,* (2 *Paige's Rep.* 300,) which was strongly urged upon the argument, was the case of a vendee in possession of land under a contract to purchase, and it was determined that the possession was constructive notice of his equitable rights. The same rule would apply to a tenant in possession, and, we may add, to all others, of whose claims, legal or equitable, notice cannot be given through the medium of the county records. Here the complainant claims as mortgagor. The law requires him to proceed one step farther ; to show not merely a constructive notice, but in addition, attending circumstances which will affect the purchaser with fraud. (8 *Cow.* 264.) All that can be fairly claimed for the notice to these defendants is, that it was sufficient to put them upon enquiry. It was indeed urged upon the argument that the possession of the complainant was direct notice, per se, to the defendants, of the particular claim of the plaintiff, and that the purchase by the former was fraudulent in law, whatever might be their intention.

No authority was cited in support of this position, for the reason, it is presumed, that none could be found. Such an assumption would at once confound all distinction between express and implied notice ; a distinction fully recognized by all the decisions upon the subject. The only fact of which these defendants had notice was the possession of the complainant.

As evidence of title, that possession was in its nature equivocal, being equally consistent with an ownership in fee, with the equitable rights of a vendee under a contract to purchase, and the relation of landlord and tenant, as stated by Carter to the defendants. In certain cases, the law would bind them at their peril to act upon this evidence, and to inquire into the nature and extent of the claim of the occupant; and this is all, it is believed, which is meant by constructive notice, or notice to put a party upon inquiry. Upon this point, the case of *Oxwick* v. *Plumer*, (*Bacon's Abr. tit. Mortgage, E. 3, p. 666*,) is conclusive, if authority were necessary. Oxwick was mortgagee of eight acres of copy-hold, held by his mortgagor under a covenant from his father to surrender the same. The mortgage was foreclosed, and the mortgagee by decree was let into possession; after which, the father of the mortgagor then being thirteen years out of possession, surrendered to Plumer for a valuable consideration, and the latter being duly admitted, brought his ejectment, and the other filed his bill to be relieved. The bill was dismissed, with costs; the court determining that the equities of the parties were equal, (which could not be, if the possession of Oxwick was express notice, or equivalent to express notice to Plumer,) and that the legal title must prevail; that the covenant to surrender, though prior, " could not be set up against him who had no notice of it." If, then, the notice to these defendants was constructive merely, and the authorities above cited are law, it was insufficient to deprive them of the protection afforded by the registry acts. Again, it was said by the counsel for the complainant, that the defendants were guilty of gross laches, in not inquiring into the title of the complainants, which was equivalent to a fraud, and that the honesty of their intention was no excuse. This is in fact the same question that has been discussed above, in another form. But in this point of view, it may be deemed a sufficient answer to say, that in a case like the present, gross negligence, or the omission of ordinary caution, ought not to be imputed to an individual who purchased land upon the strength of evidence which would induce a court of law to determine in favor of the validity of the title of his vendor, when that title is impeached by one who could, by the

*1832.*

Grimstone
v.
Carter.

exercise of ordinary prudence, have protected himself and given notice of his rights to others under the registry acts.

Let us test the conduct of the defendants by this rule. They knew that the complainant was in possession of a part of the premises mentioned in the bill. This possession was presumptive evidence of a title in fee in the occupant, subject like any other presumption to be rebutted by written evidence that the fee of the land was in another. The records of the county, made legal evidence for this purpose, showed an absolute conveyance, with covenants of warranty from the complainant to Carter. The presumption from the possession of Grimstone was then repelled, and a court of law upon this evidence must have determined that the possession of the complainant, if not tortious, was in subordination to the title of Carter. It is difficult for me to conceive how the defendants can be guilty of laches for coming to the same conclusion from the same premises. The same remarks will apply to the claim of the complainant under his mortgage. The answer avers that the records were searched, and that no mortgage was registered against the premises. The above facts contained in the clerk's certificate, unless the registry act is to become a dead letter, were evidence to these defendants not only that no mortgage was registered, but that none whatever was outstanding against the premises. " The plain intention of the statute," says Spencer, Ch. J. in *Jackson* v. *Campbell,* (19 *John. Rep.* 283,) " is to give notice through the medium of the county records to persons about to purchase. If they search and find none, they ought never to be affected by any dormant or concealed mortgage. If the purchaser, confiding that there exists no mortgage, none being on record, parts with his money and takes a deed, the statute is his protection." The defendants did search, and found no mortgage, and even believing, as they swear, that none existed, they parted with their money ; and if the above decision is law, their confidence was founded on legal evidence. Instead, therefore, of being charged with gross negligence, no reason is perceived why they are not entitled to protection against this concealed mortgage.

The next inquiry will be, if the circumstances attending the purchase, in connection with the possession of the complainant, were sufficient to affect these defendants with fraud. The bill does not charge these defendants with purchasing with a view to defeat the claims of Grimstone ; and the answer unequivocally denies all knowledge or suspicion of that claim. And it appears to me that the facts detailed by the defendants go strongly to corroborate this general averment. In the first place, Grimstone had conveyed the entire lot of 210 acres to Carter. The defendants found him in the actual possession of the south half of this land, with a claim of title to the whole, and that claim supported by the evidence of the county records, showing, in the manner above mentioned, the land free from incumbrance, and a title regularly deduced from Ambrose Hall to Grimstone, and from the latter to Carter. The bargain was more than a month under consideration, and it is a remarkable circumstance, which I trust will be found susceptible of satisfactory explanation, that the attorney in whose office, and, for a part of the time, in whose hands this defeasance was lodged, was the agent of Carter in his communications with these defendants, and assisted in drawing the deeds when the bargain was consummated, without in any manner apprising them of a fact which must have at once put an end to the negotiation. Whatever opinion may be formed of the conduct of those agents in whom the complainant reposed confidence, I can see nothing in these circumstances which casts any suspicion on the integrity of these defendants.

Upon the facts in this case, the conduct of the complainant upon the question of negligence stands, to say the least of it, unfavorably contrasted with that of the defendants. The statute, as we have seen, renders it the duty of a person creating a trust, or having rights of which notice may be given through the medium of the county records, to give or at least make it the interest of others to give that notice, under the penalty of forfeiting those rights in the case of a purchaser for a valuable consideration. How has the complainant discharged his duty in this respect to himself and third persons ? His deed to Carter is absolute for the whole 210 acres ; he acknowledged

this deed, it must be presumed, with a view to its being recorded; he knew, or was bound to know, that it would be recorded as a *deed*, since, according to the bill, an absolute transfer to Carter of one half of the lot was intended by the parties. The *other* moiety was to be subject to a secret trust between the parties to it, of which they never intended to give notice to the public. That such was their intention, I infer from the manner in which the writings were drawn, and from the fact that by the stipulation, the defeasance of which one copy only was made, was to remain in the hands of a mutual trustee. It could not therefore be recorded without the assent of the complainant, and that assent was neither asked or given. "The intention of the act (says Mr. Sugden, in speaking of the registry acts, *Law of Vendors, p.* 471,) was to secure subsequent purchasers and mortgagees against prior secret conveyances and fraudulent incumbrances."

In the present case, the complainant, instead of constituting Carter a mortgagee by the instrument ordinarily adopted for that purpose, and thus cast upon Carter the responsibility of procuring the instrument to be recorded, from a regard to his own interest, has chosen to create a secret trust, and through ignorance, gross negligence or fraud, has invested Carter with the means of perpetrating fraud, either upon himself or bona fide purchasers. If his confidence has been violated, and he has been grossly defrauded by his trustee, as there is too much reason to believe, these defendants at least are guiltless of all participation in that fraud, and are not to be held responsible for its consequences.

The injunction as to Welles and Seymour must be dissolved.

*M. T. Reynolds & A. S. Alexander*, for the complainant. The only question presented by these pleadings is this: whether the complainant's being in actual possession of the north half of the 210 acre lot, having and claiming certain equitable rights, and the fact of this possession being known to these defendants before their payment of the purchase money, was notice to them that the complainant had rights, and that they must take the land subject to those rights.

1. A plea of purchase for a valuable consideration, without notice, must aver that the vendor was in possession, and also that the purchase money was actually paid. (*Jewett* v. *Palmer*, 7 *John. Ch. R.* 65. 2 *Mad. Ch. Pr.* 323. *Walwyn* v. *Lee*, 9 *Vesey, jun.* 32. *Daniels* v. *Davison*, 16 *Id.* 249, 252.) An answer setting up this defence should be as full as a plea. The argument in reply to this is, that the complainant, having conveyed by absolute deed, was merely a tenant at sufferance, and that possession of the tenant is possession of the landlord. But the pleadings show that the complainant was a mortgagor in possession of the north half of the lot; and so the vice chancellor views it throughout his opinion. If so, the legal title is to be considered in him; the mortgage is only a security, and the complainant cannot in any view be deemed a tenant to Carter. (*Runyan* v. *Mesereau*, 11 *John. Rep.* 534. *Coles* v. *Coles, per Spencer, J.*, 15 *Id.* 319.)

2. Persons claiming as purchasers without notice, must not only deny all notice, but every circumstance from which notice may be inferred. It is fair to presume that a person other than the vendor being in possession, would lead to inquiry and a knowledge of the occupant's claims. (*Galentine* v. *Erwin*, *Hopk. R.* 48, 55, 56. *Murray* v. *Ballou*, 1 *John. Ch. R.* 566. *Heatly* v. *Finister*, 2 *Id.* 158. *Smith* v. *Low*, 1 *Aikyns*, 489.) Against this point it is urged that notice to break in upon the registry acts must be such as will, with the attending circumstances, affect the party with fraud. (*Dey* v. *Dunham*, 2 *John. Ch. R.* 190. *Jackson* v. *Van Valkenburgh*, 8 *Cowen*, 260.) Mr. Justice Platt, in the case of *Dunham* v. *Dey*, (15 *John. R.* 555,) lays down this rule : that where the proof of notice is clear and certain, it is, per se, evidence of fraud in him who attempts to defeat a prior incumbrance by setting up a subsequent deed. The inquiry then is, how particular and certain must this notice be ? We contend that actual possession is such clear, certain and notorious prima facie evidence of right, that it is, per se, evidence of fraud in the purchaser who does not inquire what the rights of the possessor are ; or, at least, that he must take the land subject to the claim of such occupant.

3. If a person is in possession of land, a subsequent pur-chaser has constructive notice of the possessor's rights, and takes the land subject to all his equitable claims. (*Governeur* v. *Lynch*, 2 *Paige*, 300. *Chesterman* v. *Gardner*, 5 *John. Ch. R.* 29, 32. *Allen* v. *Anthony*, 1 *Meriv.* 282. 2 *Ves.* 437. 13 *Id.* 118. *Daniels* v. *Davison*, 16 *Id.* 249. 17 *Id.* 433, *S. C. Tuttle* v. *Jackson*, 6 *Wend.* 213, 226, *and cases there cited.*) This rule as laid down in *Governeur* v. *Lynch,* and fully sustained by the opinions in the other cases cited on this point, is surely broad enough to include the case before us ; and indeed we can per-ceive no reason why a lessee or purchaser in possession should be notice any more than a mortgagor in possession who has equal equities. The reason of the principle seems to be this : that possession being prima facie evidence of right, and that without it no title can be completely good, (3 *Cruise*, 330,) the law compels the purchaser to ascertain the claim of such actual occupant, or at his peril to take the land, charged with all the equitable rights of such tenant. Nor is there any hardship in the operation of this rule ; at all events, it is no worse in extending it to mortgagors in possession than to les-sees or purchasers.

The deed from Grimstone to Carter was made in July, 1830 ; that from Carter to Welles and Seymour in May, 1831. Now suppose Grimstone's deed to be absolute and indefeasi-ble, and that some two months after its execution, Grimstone had taken a contract of purchase from Carter, paid four fifths of the purchase money, and entered into and held possession under this contract, or suppose Carter, for a valuable consid-eration, had given him a lease for 900 years, at a pepper corn rent, it is conceded by the opinion of the vice chancellor that Welles and Seymour would be bound to take the land subject to these rights, even if, after diligent search, they had found a perfect, unincumbered, recorded title in Carter. In reason, can there be any difference between the case supposed and the one under discussion ?

It is said that Grimstone, by giving a deed absolute on its face when in fact it was only a mortgage, enabled Carter to perpetrate a fraud. The same argument would hold equally good in the supposed case of the contract to purchase. Grim-

stone in that case should take a deed, give back a mortgage, and thus spread the whole title upon the records. By neglecting to do so, he invests Carter with power to commit a fraud. But the answer in both cases is, that we were in actual possession, exercising notorious acts of ownership over the property, and this was sufficient notice to apprise all the world that we had claims, though not of their extent; and if any person wished to know what our rights were, it was their duty to make the necessary inquiries.

The vice chancellor takes a distinction between a mortgagor and a purchaser in possession. It is this: that a mortgagor has power to secure himself under the registry acts, and that a purchaser has not. In this view, we apprehend, the vice chancellor is mistaken, inasmuch as we have already shown how a purchaser may spread the whole title upon the records. But the case of *Governeur* v. *Lynch* could not have turned on this distinction, for two reasons: 1. This distinction is not assigned as the ground; and 2. When the facts on which this decision arose occurred, contracts for the purchase of land, we think, could be recorded. By the 4th section of the *New Revised Laws, p.* 370, it is declared that "every deed, conveyance or writing, whereby the right or title to any lands may be affected in law or equity, shall be recorded," &c. By several late statutes the provisions of this section have been extended to almost all the state. But the late revision expressly excludes mere contracts from registry. (1 *R. S.* 762, § 38. See also *Session Laws,* cited under this and the 1st section of this chapter, 1 *R. S.* 756.) The case in 6 *Wendell,* 213, which recognizes and establishes the same principle as that laid down in *Paige,* was clearly a case where a party might protect himself under the registry acts.

Again, the vice chancellor assumes another ground which we think is not tenable, and that is, that constructive notice is only sufficient to put a party upon enquiry, and not sufficient to break in upon the registry acts. The circumstances amounting to constructive notice, may in some instances be such as to produce as clear, certain and convincing proof as express notice itself; and then, according to Mr. Justice Platt, it we : be, per se, evidence of fraud.

1832.

Grimstone
v.
Carter.

We conceive that altogether another view may be taken of this subject. ￱ The bill does not charge the defendants Welles and Seymour with fraud in the purchase; it is framed with a totally different aspect. It proceeds upon the principle that the complainant having actual possession of the land, with certain equitable rights, is not to be deprived of that possession, nor of those rights, without his assent. That his possession was notice to all the world that he had rights, though not of their precise nature or extent. And that under these circumstances Welles and Seymour might either enquire what his rights were, or at their own peril take the land, subject to all just claims of the complainant, be they more or less. The bill presumes that these defendants took the land chargeable with the equitable rights of the complainant, rather than cast upon them the odious imputation of fraud. Upon this 3d point the vice chancellor cites the case of *Oxwick* v. *Plumer*, (*Bac. Abr. tit. Mortgage, E.* 3, *p.* 666,) to show that possession is not of itself notice. It must be admitted that this authority conflicts with those cited by us; but the latter being subsequent decisions, and the most important of them in our own courts, they must be considered as overruling the former. It ought to be observed, however, that this question, of possession being notice, does not appear to have been discussed in *Oxwick* v. *Plumer*, nor until a much later period.

*S. M. Hopkins & H. F. Penfield,* for defendants. The defendants Welles and Seymour are bona fide purchasers for a valuable consideration fully paid, without notice of any claim upon the estate. And this, although not a good weapon of attack, yet as a defence, affords a perfect shield for the defendants in a court of equity. (*Sugd. Law of Vendors,* 476. *Oxwick* v. *Plumer, Bacon's Abr. tit. Mortgage, E.* 3. *Frost* v. *Beekman,* 1 *John. Ch. Cas.* 288. 18 *John. Rep.* 544, *S. C. Jackson* v. *Henry,* 10 *Id.* 185. *Whittick* v. *Kane and others,* 1 *Paige's Rep.* 202.) The case of *Oxwick* v. *Plumer* seems to be a leading case upon the great doctrine of law, where equities are equal. Welles and Seymour have obtained fairly a perfect recorded title under the registry laws of the state.

And this affords them a perfect protection, which can be avoided only upon the ground of fraud. (*Sudg. Law of Vendors*, 471. *Jackson* v. *Burcott*, 10 *John. Rep.* 457. *Jackson* v. *Elston*, 12 *Id.* 452. *Jackson* v. *Van Valkenburgh*, 8 *Cowen's Rep.* 260. *Hine* v. *Dodd*, 2 *Atk.* 275. *Jolland* v. *Stainbridge*, 3 *Ves. jun.* 478. *Dey* v. *Dunham*, 2 *John. Ch. Rep.* 182. 15 *John Rep.* 555, *S. C. Berry* v. *Mutual Ins. Co.* 2 *John. Ch. Rep.* 603. *Brinkerhoof* v. *Lansing*, 4 *Id.* 65. *See also Eyre* v. *Dolphin*, 2 *Ball & Beat.* 301.) Welles and Seymour have been deliberate, cautious and vigilant. The records were searched at Utica, Canandaigua, Geneva and Rochester. Their title deeds were all duly recorded before they paid for the farm. Fraud or gross negligence is imputable to the complainant. He reposed upon the good faith of Carter for his security. If Carter has deceived him, he must not visit the evils of his negligence and misplaced confidence upon the heads of the defendants Welles and Seymour. (*Jackson* v. *Campbell*, 19 *John. Rep.* 281. *Berry* v. *Mut. Ins. Co.* 2 *John. Ch. Rep.* 603. *White* v. *Moore*, 1 *Paige's Rep.* 551.) The complainant insists that he retained possession of the north half of the farm. That this was sufficient to put Welles and Seymour on inquiry, and that they were bound to enquire under what right or title he was in possession. That his equitable title as mortgagor in possession gives him a claim upon the interference of a court of chancery superior to that of the defendants Welles and Seymour. (*Daniels* v. *Davison*, 16 *Vesey's Rep.* 250. 17 *Idem.* 433, *S. C. Governeur* v. *Lynch*, 2 *Paige's Ch. Rep.* 300.) The court has no evidence that the complainant was in possession of the half—the north half of the farm in particular. The bill is not evidence, and the answer states that Carter was in possession and building a house, and that he told Welles and Seymour that the complainant was living on the north part of the farm by permission of Carter, and jointly with him. But the answer does not state that the complainant possessed the north half of the farm.

Admitting that the complainant possessed the north half, and that Welles and Seymour had notice thereof, that was not enough to put Welles and Seymour even on inquiry.

Welles and Seymour heard nothing of the complainant's possession until after Carter had exhibited to them an absolute deed of the whole farm from the complainant, executed less than a year before, and the certificate from the clerk of Monroe, shewing that there was no mortgage or other conveyance on record from Carter to the complainant ; nor until after the defendants knew that Carter was certainly in possession of the lot, and building a framed house on it. They were therefore warranted in believing Carter's assertion that he controlled the possession of the complainant, whatever it was. (*St. Andrews Church* v. *Tompkins*, 7 *John. Ch. Rep.* 14. *Berry* v. *Mut. Ins. Co.* 2 *Id.* 603.) The complainant by his deed furnished Carter with the means of practicing a deception upon Welles and Seymour. He will be estopped from denying that the nature and design of his deed was what it purports to be on its face, where the rights of bona fide purchasers intervene, who have purchased upon faith of the deed. (*Lupin* v. *Marie*, 2 *Paige's Ch. Rep.* 172.) But the complainant claims under a written defeasance, designed to control the operation of his deed and make it a mortgage. He was bound to have the defeasance registered. The act in such case is imperative, and a notice or state of facts, sufficient to put Welles and Seymour upon inquiry, is not sufficient to break in upon the registry act. (*Jackson* v. *Van Valkenburgh*, 8 *Cowen's Rep.* 260. *Dey* v. *Dunham*, 2 *John. Ch. Rep.* 182. *White* v. *Moore*, 1 *Paige's Rep.* 551.) This is the law in the state of New-York, whatever may be the law in England. (*Berry* v. *Mut. Ins. Co. above cited.*) The registry laws are not so universal, nor so much favored in England as in the United States ; and yet the better opinion is, that this is the law in England, in cases where their registry acts apply. (*See opinions of Cowper, Alvenly and Hardwicke, in the cases cited; also Eyre* v. *Dolphin*, 2 *Ball & Beat.* 301.) This is the doctrine in the cases of deeds and mortgages ; and it may well consist with the rule in case of leases and contracts, to be found in some of the English cases, " that purchasers are bound to take notice of the possession of tenants in actual occupancy, and that notice of the existence of a lease or contract, is notice of the contents or terms of such leases or con-

tracts. (*See Kent's opinion in the case of Frost v. Beekman,* 1 *John. Ch. Rep.* 288. *Same,* 18 *John. Rep.* 544. *Also the opinion of Woodworth, in Jackson v. Van Valkenburgh,* 8 *Cowen's Rep.* 260.)

The complainant's bill might have been demurred to. It states Welles and Seymour to be purchasers for valuable consideration, and that they have obtained a good recorded title, and omits to allege any notice to them of the complainant's secret and equitable rights. The complainant has no equity against Welles and Seymour upon his own showing; and this going to the whole equity of his case, may be objected by them at the hearing.

The agreement between the complainant and L. Carter stated in the bill is vague and indefinite, and cannot be enforced by this court, by reason of its uncertainty. (1 *Mad.* 426.) It is uncertain as to the time when it is to be completed; as to the amount to be paid by the complainant; the time when payment is to be made; and the manner in which payment is to be secured. This court is therefore required to make an agreement for the parties. The agreement relied on by the complainant was in writing, and deposited with P. Carter, and afterwards with Nash, as agents for the complainant and L. Carter. Nash then knew of the complainant's claims under his agreement. He was the agent as well of the complainant as of L. Carter, and he was also privy to and acting in the negotiation between Carter and the defendants Welles and Seymour. He stood by and saw it consummated, without notifying Welles and Seymour of the complainant's claim.

If it be urged that Welles and Seymour, claiming as purchasers bona fide without notice, are bound to aver their grantor in possession when he conveyed to them, we answer that Carter was in possession actually of all except what the complainant might claim; and as to that, the complainant having conveyed by absolute deed, was merely a tenant at sufferance thereafter. And then the possession of the tenant was the possession of the landlord. (2 *Maddock,* 322.)

In reference to title, the general rule in equity is, that where two parties have equal equities, a court of chancery will leave

them to their rights and titles at law. Should the complain-ant contend that the agreement under which he claims is to be regarded as an agreement for a purchase, we answer, 1. His bill treats the agreement as a defeasance to the deed and designed to make it a mortgage in effect, and he cannot now change his ground in this cause. 2. The agreement was a defeasance in fact, and must be so regarded; it was be-tween the same parties, executed at the same time, and de-signed to control and alter the natural effect of the absolute deed.

THE CHANCELLOR. Upon the final hearing of this cause, the complainant will be holden to strict proof of the agree-ment set up in his bill, on which he founds his claim to the equitable interference of this court; and if he does not suc-ceed in establishing such agreement, his bill must be dismiss-ed, whatever may be the result of the present application. In this stage of the cause, however, and before he has had an op-portunity to examine his witnesses, every allegation positively sworn to in the bill, and which is not substantially denied in the answer, upon the defendant's own knowledge, must be taken as true. The case then presented on the appeal is this: The complainant was in possession of the north half of lot No. 54, at the time of the purchase by Seymour and Welles, un-der a written agreement from Carter to reconvey that part of the lot to him, upon the payment or security of the small bal-ance due on the mortgages over and above the $1600 which Carter was to pay for the south half of the lot. And these purchasers from Carter took their conveyance, and paid the purchase money for the whole lot, after they had actual notice of the complainant's possession; and without making any in-quiries as to the extent of his rights, or the nature of that pos-session.

It is the settled doctrine of this court that where the equi-ties of the parties are equal, and neither has the legal title, the one who has the prior equity must prevail. Nor will this court permit the party having the subsequent equity to protect himself by obtaining a conveyance of the legal title, after he

has either actual or constructive notice of the prior equity. (*Tourville* v. *Nash*, 3 *Peer Wms.* 307. *More* v. *Mayhew*, *Freem. Ch. Rep.* 175. *Wigge* v. *Wigge*, 1 *West's Rep.* 680. 1 *Atk. Rep.* 384, *S. C.*) To protect a party, therefore, and to enable him to defend himself as a bona fide purchaser for a valuable consideration, he must aver in his plea, or state in his answer, not only that there was an equal equity in himself, by reason of his having actually paid the purchase money, but that he had also clothed his equity with the legal title before he had notice of the prior equity. And if the person claiming the prior equity is in the actual possession of the estate, and the purchaser has notice of that fact, it is sufficient to put him on inquiry as to the actual rights of such possessor, and is good constructive notice of those rights. (*Chesterman* v. *Gardner*, 5 *John. Ch. Rep.* 33. *Allen* v. *Anthony*, 1 *Meriv. Rep.* 282. *Taylor* v. *Baker*, *Daniel's Rep.* 80, *note a.*) These principles are all distinctly recognized by the vice chancellor in his decision in this case; but he supposes there is a distinction between a purchaser in good faith, under the recording act, (1 *R. S.* 756, § 1,) and a bona fide purchaser, within the decisions of courts of equity in other cases. In reason there certainly can be no foundation for such a distinction. And if this case depended upon the construction of the words *subsequent purchaser in good faith*, as used in the recording act, the result would be the same. My opinion on that point is fully expressed in the case of *Tuttle* v. *Jackson, ex dem. Hills*, in the court for the correction of errors, (6 *Wend. Rep.* 213;) which opinion I believe was concurred in by all the members of the court who joined in the decision which was made in that case.[a]

I apprehend, however, that the vice chancellor is under a mistake in supposing that this is a question of notice under the recording act. The object of that statute was to protect a subsequent bona fide purchaser against a previous conveyance of the legal estate, or of some part thereof; and which

[a] In *Buck* v. *Holloway's Devisees*, (2 *J. J. Marsh. Rep.* 180,) the court say, "The only sensible rule is, that actual residence upon the land is notice to all the world of every claim which the tenant may legally assert in defence of his possession."

conveyance would be valid as against the subsequent purchaser or mortgagee, if the recording act had not been passed. But a subsequent bona fide purchaser needed not the aid of the registry act to protect him against a prior equity, or a mere agreement to convey. Having the legal title under his conveyance, he would be able to defend his title at law ; and the plea that he was a bona fide purchaser for a valuable consideration, would afford him a full protection against an equitable claim of which he had no previous notice. In the case under consideration the legal estate was absolutely vested in Carter, by the deed of July, 1830 ; and although by the executory agreement to reconvey, such deed, in equity, was nothing but a mortgage as to the north half of lot No. 54, yet a bona fide purchaser from the holder of the absolute deed would have been protected, both at law and in equity, if no recording act had ever been passed. ( *Whittick* v. *Kane*, 1 *Paige's Rep.* 202.) Therefore, as to the equitable claim of this complainant, it was perfectly immaterial whether the deed from him to Carter was recorded or otherwise. The only benefit to be derived from the recording of that deed would be to protect the purchaser, claiming under the same, against a subsequent grantee of the complainant, who might, perhaps, become a purchaser of the property without notice of the existence of such a deed. If that deed could be considered as coming within the provisions of the third section of the recording act, (1 *R. S.* 756,) so as to constitute the relation of mortgagor and mortgagee between the complainant and Carter, no benefit could be derived from the recording thereof ; because it was not recorded in the book of mortgages. Neither was the writing explanatory of its being designed only to have the effect of a mortgage recorded with it, and at the same time. The object of that section of the statute was to protect bona fide purchasers from the mortgagor. It is therefore the duty of the person who receives such a mortgage to have the defeasance recorded with his absolute deed, in the book of mortgages ; otherwise he derives no benefit from the recording of such deed. But the rights of the mortgagor are the same, whether the deed and defeasance which constitute the mortgage are recorded or not.

I apprehend, however, that at law this must be considered as an absolute and valid conveyance of the whole lot; with an agreement to resell and reconvey the north half, upon the terms and conditions specified in the contract. And such an agreement, being a mere equitable claim upon the estate which could not affect the title of a bona fide purchaser without notice, is expressly excepted from the provisions of the statute requiring conveyances to be recorded. (1 *R. S.* 762, § 38.)

This is undoubtedly a hard case for the purchasers, who supposed they were getting a good title. But as the complainant was not aware of their negotiation for the purchase of the property, and therefore had no opportunity to apprize them of his equitable claim to a re-conveyance of the north half of the lot, it would be equally hard to deprive him of his property without consideration. Seymour and Welles were informed he was in possession, which by the settled law of the land was sufficient to put them on inquiry, and to deprive them of the defence of bona fide purchasers without notice of his rights. And they, in the language of Lord Eldon, having neglected to take the obvious precaution of inquiring as to the nature and extent of the tenant's interest in the property, they must suffer the consequences of their neglect.

The order appealed from must be reversed, with costs; and the injunction must be retained until the hearing. But it must be without prejudice to the right of the respondents Seymour and Welles, to bring an ejectment suit, and to proceed to judgment therein, unless the complainant shall within thirty days stipulate to deliver up the peaceable possession of the property to them, and pay the value of the mesne profits to be ascertained by a master under the direction of the court, if he does not succeed in establishing his equitable right to a re-conveyance upon the final hearing of this cause.