## HENRY V. DISBROW vs. DE GARMO JONES and others.

First Circuit.

Disbrow
vs.
Jones.

The possession of a tenant is notice to a purchaser of the actual interest the tenant may have in the premises.

Insurance is a personal contract, and does not pass with the title of the property insured.

THIS was a motion to dissolve an injunction. The facts in the case, as appear from the bill, and answers of Jones and John L. Whiting, two of the defendants, are as follows:

De Garmo Jones was owner of lots No. 186 and 187, in section four, in the city of Detroit; and February 1, 1832, he demised the same, with the warehouse thereon, to John L. Whiting and John J. Deming, for the term of five years, at a rent of $600 per year, payable quarterly. The lessees covenanted in the lease to keep the warehouse on the premises insured against loss or damage by fire, for not less than $2,500, in the name of and for the security and benefit of Jones; and Jones covenanted in the lease, that in the event the warehouse should be consumed by fire and from hazards contemplated by the policy, he would re-build it within six months after its destruction. September 10, 1834, Jones endorsed upon the lease an agreement to extend the term two years longer, for an additional sum of not exceeding $200 per year.

April 27, 1836, Jones sold and conveyed the premises to Augustus Garret, Daniel B. Brown, Nathaniel J. Brown, William R. Thompson and George W. Hoffman, for the sum of $20,000. The conveyance contained covenants of seizure and warrantee, and also covenants against incumbrances. The purchasers gave their notes for $4,000 at four months, and also their bond and mortgage on the premises for $16,000, payable in five equal annual instalments, with annual interest.

An agreement was entered into at the same time, between Jones and his vendees, reciting the extension of the term to Whiting, (who had purchased the interest of Deming in the lease, and then occupied and continued to occupy the premises up to the time of filing the bill,) stipulating that during the

two years, or until possession should be given up by Whiting,
Jones should pay to his vendees the interest of the $20,000 in
lieu of the rents for that time; and the rent was to be received
by the vendees up to February 1, 1837.

Whiting was at the same time, applied to, to know whether
he would surrender the possession of the premises on the first
of February, 1837, and he declined doing so, and stated that
he should hold the premises for the full term to which the lease
had been extended, (being two years from February 1, 1837,)
and all the vendees were informed of that fact.

Soon after the purchase, Garrett, Brown and Brown sold
and conveyed all their interest to Thompson; and afterwards,
October 21st, 1836, Thompson sold and conveyed all his inte-
rest to Disbrow, the complainant, and in payment therefor, Dis-
brow conveyed to Thompson a certain tract of land at the sum
of $3,200, or there abouts; gave his bond in a penalty of $2,000,
or there abouts, and gave his note for $2,070.

December 7, 1836, Whiting obtained insurance from the Pro-
tection insurance company on the warehouse, for $2,500, in
his own name, but as stated in his answer and also in the an-
swer of Jones, it was in fulfillment of his covenant contained
in the lease, and for the benefit and security of Jones.

April 26 and 27, 1837, the warehouse was burned down, and
the loss, as charged in the bill and admitted in the answers, was
within the policy of insurance, and the insurance company
were willing to pay to Whiting. No part of the consideration
money had been paid to Jones, except the one-fourth part of
the note paid by Hoffman, and no part of the amount for which
the bond and mortgage were given had ever been paid. The
bill alledged that Disbrow, on the 27th of April, 1837, tendered
and offered to pay his proportion, being three-fourths of the
amount due, if Jones would stipulate to give him possession,
and re-build or erect another storehouse upon the premises
within a reasonable time, and would also give him the propor-
tion which he claimed, (being three-fourths) of the insurance
money. The answer denies such tender and offer, but states
that Jones then called on Disbrow for payment of the amount

of the purchase money then due, and Disbrow declined paying, saying at the same time, he had not had possession, and was not liable to pay until the building was re-placed and the premises put in the condition they were before the warehouse was destroyed by fire. The answer also stated, that some conversation was had concerning the insurance, in which a claim was set up by Disbrow for a part of the insurance money; which claim was denied by Jones.

The answer of Whiting stated his damages, in case the covenant by Jones, to re-build, was not performed, would amount to not less than $2,000 per year, over and above the rent.

It was charged in the bill, and admitted by the answer, that the building destroyed was worth more than $2,500, and that it would cost more than $3,000 to erect one equally valuable and capacious on the premises.

April 29, 1837, Jones proceeded to foreclose his mortgage upon the premises, by advertisement; amount then claimed to be due being $4,320, and the premises were advertised to be sold July 31, 1837.

It was stated in the bill that the whole of the premises had had been advertised for sale by Jones, for the first instalment of $4,320, and insisted that it was not competent to advertise and sell more of the premises than were necessary to pay the amount of the purchase money and interest then due. In reply to this statement in the bill, the answers stated that the premises were situated on the Detroit river, at the foot of Woodward avenue, being 100 feet on the river and 86 feet on the avenue, and derived their principal value from being advantageously situated for a wharf and for commercial purposes.

The bill also alledged the mortgage to be defectively executed, there being but one witness to the execution by Garrett and N. J. Brown, and prayed for an injunction to restrain the insurance company from paying over the money, and to inhibit and enjoin Jones from proceeding to foreclose his mortgage under the advertisement, &c., and that Thompson be decreed to vest in complainant a more perfect title to the premises, or

that the sale from Thompson to complainant might be set aside, and that he repay the purchase money to complainant, &c., and for other and further relief.

A motion was now made to dissolve the injunction for want of equity in the bill, and the answers denying all the equity alledged.

GOODWIN and ROMEYN in support of the motion.

D. GOODWIN.

I. The first point which seems to be made in the bill, as a ground for the injunction, is the covenants in the conveyance by Jones, and the possession under the lease.

1. If the facts be admitted on which this complaint is founded, the remedy is peculiarly and solely at law by action of covenant, by Disbrow against his grantor. 4 *Kent's Com.*, 471 *to* 473.

2. This was provided for by the agreement of parties, and the lease to Whiting is no breach. All the papers executed together, constituted one agreement, and by it Whiting was to possess under the lease; the vendees of Jones were to receive the rents up to February 1, 1837, and for the two years thereafter Jones was to receive the rents and pay the vendees in lieu thereof, $1,400 per annum. There is no ground of complaint either at law or in equity. Jones continued the landlord the two years, paying as aforesaid, and then the vendees were to have possession, or sooner if Whiting voluntarily surrendered possession before that time.

3. Whiting being in actual possession, complainant and all other parties, had notice of his term. *Daniels* vs. *Davison*, 16 *Vesey*, 249; *Taylor* vs. *Stibbert*, 2 *Vesey*, 437; *Chesterman* vs. *Gardner*, 5 *John. Ch. R.*, 29; *Grimstone* vs. *Carter*; 3 *Paige*, 421.

II. As to the tender alledged in the bill of a part of the money, and the insurance money.

1. There should have been an unqualified tender of the whole amount due, to make any case for equity. A qualified

tender is insufficient; so also, a tender of a part only, is not a sufficient tender.

If complainant has any claim to possession, or for re-building, or for the insurance money, it is at law. If complainant is entitled to the insurance money as reversioner, he may recover in an action at law; and there is no allegation in the bill that either Whiting or Jones would not be responsible for it, if paid into their hands.

2. The tender is denied in the answer by Jones.

III. The complainant has no claim upon Jones to re-build, nor has he any claim for the insurance money.

1. There is no contract between Jones and his vendees upon which such a claim can be founded.

2. By agreement between Jones and his vendees, Whiting was to have possession the two years; Jones to continue the landlord and receive the rents. At the expiration of the two years, the vendees were to have possession of the *premises as they then are. During that time, the mouths of the vendees of Jones are closed, and they have nothing whatever to say, touching the possession.* The vendees and the complainant under them, until that time, are estopped.

3. The contract of insurance is personal between the parties, and the parties only to the contract can claim the benefit of it, except by agreement whereby a trust is created, as was the case between Jones and Whiting. *Saddlers' com.,* vs. *Babcock,* 2 *Atkyns,* 557, 558; *Mildmay* vs. *Folgham,* 3 *Vesey,* 472; *Holtzopffel* vs. *Baker,* 18 *Vesey,* 114; *Columbian ins. co.* vs. *Lawrence,* 10 *Peters,* 507; *Lament* vs. *Chathem ins. co.,* 1 *Hall's R.,* 45.

4. Even if complainant and those in interest with him, could claim the insurance money under the covenant in the lease, they must assume the place of Jones and perform the contract to Whiting to re-build in six months, and indemnify Jones against it. The damages of non-performance, Whiting states in his answer, will be not less than $2,000 per year, above the rents.

5. Whiting has the equitable right to hold the insurance

money as security for the performance of Jones' covenant to
re-build.

6. The complainant's bill is founded on a mistaken view of the premises. It should have been (if any thing,) a bill to redeem and for an account for that purpose. The mortgagee has a right under his mortgage to possession, and to the rents and profits, unless there be an agreement to the contrary; and if he obtains possession, he accounts for the rents and profits. The grantee subject to the mortgage, takes subject to the equitable rights, and of them he must take notice; if he is deceived by his grant or, his remedy is against him alone, and this cannot prejudice the mortgagee. 2 *Cruis. Dig.,* 97 *to* 101; 4 *Kent Com.* 154, 155, 164.

T. ROMEYN.

I. The first point made by the bill seems to be the breach of covenants in the conveyance by Jones, through Whiting's continued possession. What were Jones' covenants? They are, seisin, freedom from incumbrances and quiet enjoyment. These covenants are personal and do not pass to the assignee. (*See* 4 *Kent Com.* 459.) The last is the only one of which this complainant (who is *not an original purchaser*) can avail himself of. *First,* If this be broken, the remedy is by action of *covenant at law.* *Second,* There is no breach of it for the original agreement provided for the possession of the lots by Jones and his tenants until February 1, 1839.

II. The second point appears to be in reference to the mortgage and the proceedings to sell under it. The complainant seeks to enjoin the sale on these grounds: *First,* He avers that he tendered the amount which he was liable to pay on the mortgage.

To this we reply:

1. The answer of Jones denies the tender. 2. Admitting the averment of the bill to be true, the tender was insufficient:

*First,* Because it was not of the whole amount due.

*Second,* Because it was only conditional, and required from Jones before he could avail himself of it, the relinquishment

of the *possession,* which by the very terms of sale he was entitled to retain.

*Third,* Complainant also sets up the imperfection of the original mortgage. As to two of the parties there is but *one* subscribing witness.

We answer:

*First,* The officer who took the acknowledgment is to be considered a subscribing witness.

*Second,* The defect, if any, is a mere formal one, and will be disregarded by a court of equity.

*Third,* The complainant is estopped by his own acts.

· *Fourth,* The complainant objects to the sale of the *whole* lot for a single instalment.

The answer is—the lot is incapable of division without loss. ·

Under such circumstances, the court will not interfere, except to compel a sale according to the provisions of the statute regulating sales on foreclosures in equity. *Laws of Michigan of* 1833, *page* 361.

This confines the whole matter to the following grounds:

I. The obligation of Jones to re-build, and the right of the complainant to call upon him at this time and in this way.

We admit, (for the sake of this argument,) that Jones is bound to re-build. What then? He *is* the landlord for two years yet. Whiting alone can complain of his failure to build; and, until the two years have expired, Disbrow can have no action or claim against him, under these circumstances. And *in the absence of any* averments impeaching the solvency and responsibility of Jones, what possible ground is there for the interposition of a court of equity at this time.

II. The right of the complainant *to* the insurance money. What right has he? We insist, *first,* that insurance is a *personal* contract for the benefit of the party assured; *second,* that it does not attach to the reality or in any manner go with the same as incident thereto; *third,* that no equity attaches upon the proceeds of policies in favor of third persons, unless there be some contract or agreement or trust to that effect. 3 *Bos. P. C.,* 497; 12 *No. of Law Library,* 72; 2 *Atk.,*

557; 3 *Ves.*, 472; 18 *Ves.*, 114; 12 *No. of Law Journal*, 81, 82; 10 *Pet.*, 513; 1 *Hall's Rep.*, 45.

It is immaterial, for the purpose of this argument, whether Jones or Whiting has the right to the proceeds of the policy; either of them had an insurable interest at the time of effecting the insurance. (9 *Wend. Rep.*, 404.) Either of them had an interst at the time of the fire, sufficient to entitle him to payment of the damages sustained by it.

WOODBRIDGE and BACKUS opposed the motion.*

THE CHANCELLOR.—In the argument of this motion, it has been urged on the part of the complâinant, that Jones, having put it in the power of his vendees to commit a fraud upon the complainants, he is responsible for the consequences.

I am unable to see any thing in this case to authorize this position in the argument. There is no showing that goes to charge Jones with fraud.

At the time of the execution and delivery of the conveyance by Jones, to Thompson and others, Whiting was in possession and occupied the premises under the lease from Jones, and the vendees all knew that fact. Whiting was applied to, at the same time, to learn whether he wished or intended to occupy the premises the full term to which the lease had been extended, (to February 1, 1839,) and he replied that he did, and this fact was also communicated to the vendees of Jones.

There is, therefore, not only the absence of fraud on the part of Jones, in this respect, but Whiting's right to occupy formed the subject of a positive agreement between Jones and his vendees.

The deed by Jones, the bond and mortgage on the premises by his vendees, and an instrument or agreement reciting and recognizing Whiting's unexpired term, and his right to occupy under the lease, signed by all the vendees, were all executed and delivered at the same time; each of these instruments, therefore, must be regarded as a part of, and as constituting one and the same transaction. The vendees of Jones have

---

* Woodbridge and Backus have furnished the reporter with no briefs on this motion.

nothing to complain of, for Whiting was in possession when they purchased, and their right to possession was subject, by agreement, to his unexpired term. Disbrow, the complainant, was not an original purchaser from Jones, but derived his title through the vendees of Jones, and clearly they could convey no greater interest than that which they themselves had in the premises.

Whiting was also in possession, and occupied the premises at the time of Disbrow's purchase from Thompson, and Disbrow knew that fact, as he admits in his bill, and there is no principle better settled than that the possession of a tenant is notice to a purchaser of the actual interest the tenant may have in the premises. *Chesterman* vs. *Gardner*, 5 *John. Ch.*, 29; *Daniels* vs. *Davison*, 16, *Ves.*, 249; *Taylor* vs. *Stibbert*, 2 *Ves.*, 437.

In the case in 4 *Hen & Munf*, 120, which has been cited by the complainant, it does not appear that the purchaser had notice that Bibb was in possession before he received the first deed, of February 11, 1790, and this fact, on a careful examination of the case, will be found to form the basis of that decision. In the case of *Grimstone* vs. *Carter*, 3 *Paige*, 439, I have been able to find nothing conflicting with the rule above stated, but on the contrary, chancellor Walworth says, in that case, that it is the settled law of the land that the possession of premises by a third person is sufficient to put purchasers on inquiry, and to deprive them of the defence of bona fide purchasers, without notice of his rights.

From the answers of Jones and Whiting in this case, it is clearly to be inferred that Disbrow had, at the time of his purchase, not only notice of the existence and substance, but also of the details of Whiting's lease.

It is, therefore, clear to my mind, that when Disbrow purchased the premises of Thompson, he took them not only subject to the mortgage, but also to Whiting's term under the lease.

It is also insisted by the complainant, that the mortgage is defective, there being but one witness to the execution of it

by Garrett and N. J. Brown. To this allegation the defend- <span>First Circuit.</span> ants answer, that the officer who took the acknowledgment <span>Disbrow</span> must be considered a subscribing witness. It is not necessary <span>vs. Jones.</span> now to decide how far the execution of the mortgage may be considered in compliance with the statute, for if the mortgage were defectively executed in this respect, it could form no ground in the present case for the interference of this court.

The complainant has recognized this mortgage in his purchase, and there is no pretence that the money is not due.

The tender alledged in the bill is not supported by any other evidence, and is positively denied in the answer.

That the whole of the premises are advertised to be sold for the first instalment due on the mortgage, furnishes no ground for the inteference of this court, as it is shown by the answer, that the premises are valuable principally for a wharf and storehouse, and the whole premises have heretofore been used and occupied for that purpose, and cannot be sold separately without injury to the whole.

After a careful examination of the whole matter, I have been irresistibly led to the conclusion that the case does not justify an interference with the policy of insurance.

The insurance is a personal contract, and does not pass with the title of the property insured. This doctrine is clearly laid down in *Ellis on Insurance,* page 72. The language of lord chancellor King is there quoted, and he says, in reference to policies of insurance: " these policies are not insurances of the specific things mentioned to be insured, nor do such insurances attach on the reality, or in any manner go with the same as incident thereto, by any conveyance or assignment, but they are only special agreements with the persons insuring against such loss or damage as they may sustain." This doctrine is fully recognized, and stated to be the true one in the *Saddlers' company,* vs. *Badcock,* 2 *Atk.,* 554, and in 1 *Philips on Insurance,* 27.

All the decisions I have been able to find conflicting with this principle, arise under the builders' act statute of 14 Geo. III., which empowers the governors or directors of the insurance

offices within certain districts, upon the request of any persons interested in, or entitled to any houses or buildings which may be burned down, &c., or upon any grounds of suspicion that the person insured has been guilty of fraud or wilfully setting the houses or buildings on fire, to cause the insurance money to be laid out, as far as the same will go, towards re-building or repairing the property damaged, &c. Although, therefore, a policy as a personal contract does not pass with the property insured, yet a covenant to insure to a certain amount, entered into by a lessee or other person having an estate in land, is so far beneficial to the property, that in cases to which this statute applies, it will run with the land, and an assignee entitled to the benefits of covenants real, may maintain an action on the covenant to insure, if it be not observed. *Hughes on Insurance*, 392.

The case of *Vernon* vs. *Smith*, 5 *Barn. & Ald.* 1, was a case arising under the statute of 14 Geo. III., and the views expressed by *Best, J.*, in that case, have not the authority of a decision, and the reasons upon which those views were based, do not exist here.

If Jones had no remaining interest or liabilities, the case would present a different aspect. But if the views heretofore taken are correct, that the execution and delivery of the deed, bond and mortgage and agreement, were all at the same time, and formed parts of one and the same transaction, and that Disbrow had legal notice of the existence of the lease, it follows that both Whiting and Jones had an insurable interest. Jones is bound to pay $1,400 per year for the two years, and is bound by his contract with Whiting, to re-build in six months, and Whiting is to pay rent for the two years.

Whether the doctrine of *Best in* 5 *Barn. and Ald.*, be correct or not, it would be going further than any case I have been able to find, to interfere by injunction in cases like the present. The legal rights of the parties should be carefully guarded, and seldom interferred with by injunction.

As to whether Jones may not be compelled to apply the insurance money, at or before the expiration of Whiting's term,

need not now be decided. The dissolution of this injunction does not prevent Disbrow's recovery of Jones, if he is liable to him for any portion of the insurance money; and there is no allegation in the bill that Jones is insolvent or unable to pay any amount which may be recovered against him.

Upon the whole then, Jones seems to have acted fairly, so far at least as regards the sale to his vendees. All of the facts in relation to the premises, were at that time disclosed by Jones, and Whiting's right to occupy under the lease, was made the subject matter of a positive agreement between Jones and his vendees.

Whiting continued to occupy and was in possession when Disbrow purchased from Thompson, and Disbrow knew that fact, and this the law regards as notice to him of Whiting's rights in the premises.

If a fraud has been practiced upon the complainant at all, it is by his immediate vendees, and as against them he has an adequate remedy.

Jones is, therefore, clearly entitled to his remedy to collect his money which is due; he has not been in fault, and it would be unjust to restrain him from doing so. Jones and Whiting had an insurable interest to more than the amount insured, and they have earned the benefits to be derived from the policy, for they have paid the premium on the insurance.

Some other points have been made in the argument, and they have all been carefully considered, and I have been irresistibly lead to the conclusion, above stated.

This case may be like the case in the 3 *of Paige's Reports,* a hard one; but this court is bound by the rules of law, and whenever courts shall undertake to judge *according to* the convenience of parties in each case, there is an end to all fixed and settled rules, and the rights of parties will be left to the caprice of whomsoever may occupy the seats of justice at the time. The injunction in this case must be dissolved.

Injunction dissolved.