Catón, Justice, delivered the opinion of the court: .The complainant filed his bill in chancery, against Martin & Evans, in the Fulton circuit court, praying the conveyance to him of a certain lot of land. The bill states that on the 26th of August, 1886, he purchased of Evans 320 acres of land, including the premises in question, for the sum of $2,000, of which he paid down $1,400, and gave his note for the balance, payable in December following, and took a bond for warrantee deed of the premises; and that he supposed, at the time, that Evans could make a good title to the land. That after the complainant had paid all but $40 of the purchase money, Evans informed him that he had no title to the land, but that he had [* 149] purchased it of Martin by a parol agreement, for $750, of which -he had paid $150, and the balance was converted into a loan at twelve per cent, interest, and considered as a payment for the land. That afterwards Martin promised to convey the land to the complainant, without claiming any lien for the purchase money. That afterwards, Martin, as the clerk of Evans, received the balance of $50 due on the purchase from Evans, and again promised to convey. That Evans made the deed for the land mentioned in the bond, except the lot in controversy. That Martin knew of the sale by Evans to the complainant, and by Evans’ directions, pointed out the land to him, and at that time Martin set up no claim to the land in controversy. That in the spring of 1837, the complainant took possession of the land in controversy, and made improvements thereon to the value of $100 and in the same spring Martin rented a part of the land of the complainant. That in February 1838, Martin and Evans made a settlement, and Evans was found indebted to Martin in the sum of $575; and Evans, being insolvent, made an assignment for the benefit of his creditors, and preferred Martin for $500. That after Evans failed, Martin refused to convey; and the land in controversy is worth $1500. The answer of Martin admits the complainant’s purchase, as stated in the bill; but says he does not know whether the complainant knew of his claim on the land or not. That at the time of the purchase, Martin was in possession of the land in question, and the complainant made no enquiries. He admits the verbal agreement to sell to Evans, substantially as stated in-the bill, but says he was to hold the land as security. He admits the payment of the $150, and denies the payment of the balance. Admits that he told the complainant that he would convey to him whén he was paid; admits that he knew of the purchase, and pointed out the other lots mentioned in the bond, but not the one in controversy, although they passed over this in going to see the others. Admits he received the $50 of the complainant, as clerk of Evans, but did not know- on what particular account. Martin left the land in July, 1837, and the next fall the complainant took possession, and the defendant acquiesced, supposing he would soon receive his pay. He admits that he rented of the complainant a part of the land, and that the complainant made improvements. He admits the settlement with Evans, as stated in the bill, and that there was $575 of the purchase money found due. He also admits Evans’ assignment as stated in the bill, and that he is a preferred creditor to the amount of $500. He also admits that he executed a bond to the complainant to convey the land, and that he is willing to convey when he receives the purchase money. Evans 'filed no answer. A replicatibn was filed to [* 150] Martin’s answer, and proofs taken. The deposition of the defendant Evans was taken on the part of the complainant, by agreement subject to objection. Before the hearing, Martin filed exceptions to the deposition of Evans, and the exceptions were sustained, and the deposition rejected; and this is one of the errors assigned. In a court of chancery a witness is not necessarily incompetent because he is party to the record. Here the enquiry is not so mu.ch whether the name of the witness appears upon the record, as whether he is in fact swearing to promote his own interest. The sources resorted to for the purpose of ascertaining the truth are much more numerous in courts of chancery than in courts of law. Here a defendant may be' compelled upon his oath, to disclose, in his answer, to all he knows of the subject matter of the controversy, no matter how much it may prejudice his pecuniary interest; and by such disclosures he shall be bound, although his answer shall not be allowed to affect his co-defendant. To affect bis co-defendant he must be called upon by the adverse party,Tn the same way as any other witness, (usually under a rule of the court,) and then the enquiry arises whether he has any interest adverse to the party against whom he is called. If he has, he is incompetent. If he has not, he is as competent as if his name did not appear on the record. Noris it a fatal objection that he has an interest in the event of the suit; but his interest must be against the party whose interests are sought to be prejudiced by his testimony ; and even when the witness has an interest in favor of the party calling him, he may still be competent, if it appear that he has an equal interest on the other side. Then his interests are equally balanced, and his mind is in a state of equipoise, which leaves him as indifferent as to the result, as if he had no interest in the event. The enquiry then is, whether this is the situation of this witness Evans, because it is not, and cannot be denied, that he has important interests involved in this controversy. He is interested that the decision should be that the complainant could only get the land by paying the balance of $575 still due Martin, for in that way that debt at least would be discharged. Should Martin be decreed to convey the land to the complainant, then Evans would be discharged from his obligation on the bond by which he has bound himself to convey this land to the complainant; so that his interest in favor of the party calling him is to the amount of the value of the land which he states in his bill is worth $1500; while his interest, as before stated, is at most but $575, with Martin. The interest which he has in the event of this suit, preponderating in favor of the complainant, he was an incompetent witness for him, as was properly decided by the court below. The next and principal question is, whether it appears by [* 151] the other depositions, that Martin’s conduct was such as to forfeit his lien on the land for the purchase money unpaid ? Although the agreement to sell, from Martin to Evans, was by parol, still as Martin has not set up the statute of frauds in his answer, or relied upon it in any way in his defence, he must be bound by his’ agreement, to the same extent that he would have been had the agreement been reduced to writing. On looking through the depositions, I can find no evidence to even raise a plausible pretext for the conclusion that the land was ever paid for by Evans, nor indeed was it seriously contended at the bar that such was the case; so as between Evans and Martin, the latter could resist the conveyance till he had received his money. In fact, it is a general rule in equity, and it requires a very strong case to make an exception, that no man shall be compelled to part with his title till he receives the consideration; and so vigilant are the courts of equity to protect the seller, that although an absolute conveyance be made, and no mortgage or other security taken, still in the hands of the vendee, or a subsequent purchaser with notice, the vendor has a lien on the land for his money. Here Dyer, by his purchase, succeeded to all of the right which Evans had against Martin, and no more, unless Martin was guilty of fraud in suppressing the knowledge of his interest in the land from Dyer, or unless he has subsequently released his lien, either expressly or impliedly. The facts on this point are, that Martin had a general knowledge, at the time, of the sale from Evans to Dyer, and that he went and pointed out a part of the land sold, and in doing so, passed over the land in dispute. At this time Martin was residing upon and in possession of the land in controversy, and no questions were asked by Dyer or explanations made by Martin, as to his interest in the premises. That some time after, Martin gave up the possession to Dyer, and subsequently rented a portion of the land of him. There is considerable evidence of subsequent attempts at negotiation, and of loose, incidental, and ex-parte conversations of all the parties, but-nothing further that is entitled to any weight in the present enquiry. Martin’s possession was notice to all the world, that • he had some interest in the land ; and whoever bought the land, while that possession continued, took it subject to that interest, whatever it might be. 1 Story’s Eq. 388-9; 2 Yesey 437; 13 Yesey 118; 2 Paige 300; 3 Paige 421; 16 Vesey 249; 5 Johns. Ch. R.. 29. But this was not all in this case. Everything seemed to conspire to put a prudent man on inquiry to see what he was buying. The records of the county showed that his vendor had no title; he could show nothing on paper as evidence of his title, and another man was in possession; and now, with great simplicity, he complains that Martin never told him what right [* 152] he had to the land, although he never asked him the question. Surely, if Dyer, who had so much interest to know, would not take the trouble to make the inquiry, by no principle of law or common courtesy, did it become Martin’s duty to volunteer an explanation of a matter which he might well suppose was already understood by Dyer. If he would hot make the enquiry, he shall not now complain that he was ignorant. Instead of his ignorance being the result of the fraud of Martin, it was chargeable to his own folly or negligence. And now did Martin lose his lien by delivering up the possession to Dyer, and subsequently treating him as the owner, by renting a portion of the land of him ? I think the only reasonable conclusion from these acts is-, that Martin considered the parol agreement with Evans, as obligatory, and that he intended to carry it out in good faith. Had that agreement been in writing, and recorded, I think it could not reasonably be claimed that the delivery of possession would destroy or indicate an intention to abandon his lien; and certainly his rights and claims are no weaker here than they would have been in that ease. I do not think that fraud is properly imputable to Martin. His case is widely different from one who stands by and sees and encourages a sale of his land by another, and fraudulently suppresses the knowledge of the existence of his title. Here there appears nothing to have induced the belief or supposition in Martin, that Dyer was ignorant of the true situation of the title, while everything combined_ to admonish the purchaser that Martin had an interest there. Did it appear that Martin knew that Evans had exhibited to Dyer an apparently clear title • to the land, and silently stood by, and saw Dyer buy it, under the impression that he was getting a good title, this court would not now allow him to set up a claim which he had thus fraudulently concealed. Then, indeed, it might be said that he had kept silent when equity required him to speak, and now he should not speak, when conscience commanded silence. I am of opinion that the court was correct in determining that Martin should not be compelled to part with his title until he should receive his money; but as it appears that Evans was insolvent, and had made an assignment for the benefit of his creditors, in which Martin was preferred, I think the decree should have provided, that in case Dyer, within the proper time, should pay the $575 and interest, Martin should not only transfer the land to Dyer, but also his claim to that amount against Evans, and also whatever he might be entitled to under the assignment of Evans. I also think the decree should have further provided that in case Dyer should fail to pay the money, within the time limited, that then the land should be sold, and after paying Martin out of the proceeds, the balance should be paid to the complainant. The decree of the court below is reversed, [* 153] and the cause remanded, with directions to enter a decree in conformity with this opinion; the costs of the appeal to be divided between the appellant and the defendant Martin. Decree reversed.