## TUTTLE *vs.* JACKSON, ex dem. HILLS.

A purchaser at a sheriff's sale of real estate who procures his deed to be duly *registered,* cannot claim the benefit of the *registry act* against a third person, in the *actual possession* of land at the time of the sale, *under an unregistered deed;* such possession being constructive notice to the purchaser, and imposing upon him the duty to enquire as to the rights of the person in possession.

Where, in a case thus circumstanced, the judge at the circuit decided that *the time of the delivery* of the deed to the person in possession was immaterial, *it was held* that he erred, and a *venire de novo* was awarded.

The rule of *equity* under our recording acts is also the rule of *law;* whatever will in equity charge the party with notice of the equitable rights of a prior purchaser or incumbrancer, so as to deprive him of the privilege of pleading that he is a *bona fide purchaser* without notice, will, in a court of law, be sufficient to protect the legal rights acquired under an unregistered deed, against a subsequent recorded conveyance.

*It seems,* that the purchaser would be protected under the recording acts against a prior unregistered deed or mortgage, of which he had neither actual or constructive notice, if the *judgment debtor* was in possession of the land at the time of the sale, having an *interest,* the proper subject of a sale and conveyance by the sheriff.

A *transcript* of a justice's judgment filed in a county clerk's office, and of the entry of a judgment thereon by the county clerk, may be proved by an *exemplification.*

A *bona fide* purchaser at a sheriff's sale under such judgment is not bound to go beyond the transcript filed in the clerk's office, to prove the right of the sheriff to sell the property.

A *cognovit* given in an ejectment suit, in pursuance of an *award* under a submission entered into subsequent to a judgment against the defendant, does not affect such judgment, although the ejectment suit was commenced long previous to the entry of the judgment.

The statute against buying and selling pretended titles does not apply to *judicial sales.*

A *deputy sheriff* who has commenced the execution of process by a levy on the property of the defendant, during the term of office of his principal, may, after the expiration of such term, proceed and complete the execution thereof by the giving of a deed.

The court for the correction of errors look at the pleadings as they appear on the *record,* and not as set forth in the *bill of exceptions;* although at the time the exceptions were taken the pleadings were in the form set forth in the bill.

ERROR from the supreme court. In October term, **1822,** Hills, in the name of James Jackson, as *nominal plaintiff,* commenced an action of ejectment against Tuttle for the recovery of 36 acres of land, which was tried at the Oneida

circuit in October, 1826, before the Hon. NATHAN WILLIAMS, one of the circuit judges. The plaintiff produced an exemplification of a *transcript* of a justice's judgment, filed in the clerk's office of the county of Oneida, in the following form : "Oneida county, Justice's court. Jesse Hills *vs.* Daniel Gridley. March 24, 1820. Judgment rendered for plaintiff for the sum of $49,64—costs $1,18—$50,82 ; costs of copy to be added. I certify the above to be a true copy of a judgment on record in my office. Dated April 3d, 1820, (signed) Samuel Wetmore, justice of peace." The transcript was filed on the 4th April, 1820, and a judgment docketed by virtue thereof by the clerk of Oneida. On the 18th July, 1820, an execution upon this judgment was delivered to a deputy of the sheriff of Oneida, tested 15th July. On the 13th October, 1820, the premises in question were sold by the deputy to Hills, the plaintiff in the execution, for the sum of $60. On the 16th January, 1822, a deed of the premises was executed by the deputy, in the name of his principal, to Hills, which was acknowledged by the deputy before a proper officer, and recorded on the 17th December, 1822. At the time of the execution of the deed by the deputy, the term of office of his principal had expired. At the time of the *delivery of the execution* to the deputy, Gridley was in possession of the premises, and had been in such possession for several years ; but at the time of the *sale,* the defendant Tuttle was in possession, and continued in possession at the time of the trial. On this evidence the plaintiff rested. The defendant moved that the plaintiff be non-suited, because 1st. the transcript was not competent evidence of the existence of the judgment, it not shewing that the justice had jurisdiction over the parties or subject matter ; and 2d. that the demise in the declaration was laid previous to the accruing of the lessor's title, to wit, on the *first ;* whereas his title did not accrue until the *sixteenth* day of January, 1822. The judge refused to non-suit the plaintiff, intimating as to the second ground of exception taken that the supreme court would permit an amendment of the declaration so that the demise would conform to the title.

On the part of the defendant the following facts appeared : In September, 1815, Gridley, the defendant in the judgment under which the plaintiff claimed, executed a mortgage of the premises in question to Tuttle, the defendant, to secure the payment of $775,35 on the 15th April then next; which mortgage was duly acknowledged and registered on the 6th of August, 1816. In 1817 it was agreed between Tuttle and Gridley that the premises should be appraised, and that Tuttle should pay Gridley whatever amount they should be appraised at exceeding his mortgage. The premises were appraised, but at what amount did not appear; but it was shewn that Gridley tendered a deed to Tuttle, who took it to examine it, when it was snatched out of his hands and carried away by Gridley. In February, 1818, the mortgage was duly foreclosed by advertisement, and Tuttle became the purchaser for the sum of $590, and in August, 1818, he commenced an ejectment against Gridley; a verdict was rendered for the defendant which was subsequently set aside and a new trial ordered. After the new trial was ordered, Tuttle and Gridley on 1st May, 1820, submitted all matters in controversy between them to arbitration, and it was agreed by Gridley that if the arbitrators should award that he should deliver possession of the mortgaged premises to Tuttle, that he would give a relicta and cognovit in the ejectment suit; and at the time of the arbitration Gridley put the deed which he had executed in 1817 to Tuttle into the hands of the arbitrators, and agreed that they should deliver the same to Tuttle, if they should award in his favor. The arbitrators on the 20th July, 1820, made their award, adjudging that Gridley should, on or before the first Monday of August then next, yield up the possession of the mortgaged premises to Tuttle, and if he did not do so, that he should immediately after that day give a confession of judgment to Tuttle in the ejectment suit, to enable him to obtain the possession of the premises; and the arbitrators delivered to Tuttle the *deed* deposited with them by Gridley, which was a deed of the premises in question, duly executed by Gridley and wife, conveying the same to Tuttle, bearing date 1st April, 1817, duly acknowledged 11th June, 1817, and purporting to have been executed for

Tuttle
v.
Jackson.

the consideration of $1000. On the 12th August, 1820, the attorney of Gridley gave a relicta and cognovit in the ejectment suit, on which a judgment was duly entered, and in the latter part of the same month, Gridley was turned out and Tuttle put into possession of the premises in question by virtue of a writ of possession issued upon such judgment. The litigation between Tuttle and Gridley was hostile, and not ficticious or colourable.

Previous to the arbitration Tuttle requested Hills to sell Gridley's land under his judgment, promising to become the purchaser to the full amount of the judgment, as he was apprehensive that his own title might possibly fail. The plaintiff also alleged that the mortgage from Gridley to Tuttle was *usurious;* on which point evidence was adduced by both parties. The judge decided that the *deed* from Gridley to Tuttle, not having been recorded, was inoperative and void as against Hills, under the registry act; that therefore, whether the deed was or was not duly delivered in 1817, was an immaterial fact, and that in his opinion the plaintiff was entitled to a verdict, unless the jury should find that the mortgage from Gridley to Tuttle was free from usury, and he accordingly instructed the jury, who found a verdict for the plaintiff. The defendant, on a bill of exceptions tendered by him to the various decisions made against him in the course of the trial, applied to the supreme court for a *new trial,* which was refused, and the defendant sued out his writ of error. See opinion delivered in supreme court, denying new trial, 9 *Cowen,* 233. As to the objection taken at the circuit, that the demise from the lessor of the plaintiff was laid *previous* to the accruing of his title, it now appeared from the *record* that the demise was laid *subsequent* to the accruing of the title, the plaintiff below having obtained a rule to *amend,* and having amended his record accordingly, but from the *bill of exceptions* attached to the record it still appeared that the demise was *previous* to the title.

*Greene C. Bronson,* attorney general, for the plaintiff in error. The paper purporting to be the *transcript* of a justice's judgment filed in the clerk's office, not being a *record,*

could not be proved by an exemplification. The rolls containing the *judgments* and *sentences* of courts are records, and may be proved by exemplifications, because they import absolute verity. *Co. Litt.* 260, *a.*, 117, *b.* 1 *Phil. Ev.* 237, 309. An entry in the minutes of a court, though it vacates a judgment, is not a *record.* 9 *Johns. R.* 287. A record is proved by an exemplification ; other papers by the production of the originals, or of sworn copies ; but where the paper itself is not conclusive evidence, the original must be produced. 1 *Phil. Ev.* 309. 1 *Starkie's Ev.* 245, 155, 156, 181. The paper called a transcript is not conclusive evidence : it might be denied that the person making it was a justice, or the verity of the signature might be questioned. An *examination* taken by a magistrate in a criminal case is not evidence until the signature of the magistrate be proved. 2 *Burr.* 1179 ; 1 *Str.* 126. The transcript might authorize the clerk to docket the judgment, but nothing farther can be claimed under it. The fact of the transcript being filed in pursuance of the directions of a statute, does not make it evidence ; deeds in the military tract were directed to be filed, but when filed, they were not therefore *per se* evidence ; nor is an *appeal bond* of itself evidence though .directed to be filed ; unless papers thus filed are made evidence by statute, exemplifications cannot be received. The *transcript* was not competent evidence of the existence of the judgment. Previous to the statutory provisions on the subject, a party wishing to prove a justice's judgment, was bound to produce the justice and his docket or book of entries. 3 *Johns. R.* 429. 5 *id.* 351. In 1809, the official certificate of the justice, certifying the *proceedings* and *judgment,* verified by a certificate of the clerk of the county, was made evidence by statute, 5 *Statutes,* 569, *Webster's ed. ;* which provision was re-enacted in the act of 1824, extending the jurisdiction of justices. *Statutes, vol.* 6, *c.* 292, § 29. To render the certificate of the justice evidence, he must set forth not only the *judgment,* but the *proceedings ;* at least, so far forth as to shew that he had jurisdiction of the person of the defendant and of the subject matter. *Benn* v. *Borst,* 5 *Wendell,* 292. The transcript here was used as a certifi-

ALBANY,
Dec. 1830.

Tuttle
v.
Jackson.

cate, and being deficient in both particulars, it was incompetent evidence ; it neither stated that the defendant was brought into court on process, or that he voluntarily appeared ; nor did it shew in what county, or in what state the judgment was rendered. The plaintiff shewed a judgment *docketed*, but not a judgment *rendered*. In *Jackson* v. *Jones*, 9 *Cowen*, 191, referred to by the supreme court in this case, the court say that the legislature seem to have determined that the transcript should be sufficient evidence of the judgment ; but the legislature had not so declared. Had that been the intent of the act it would have been so declared. If arguments *ab inconvenienti* are resorted to, the balance of inconvenience is greatly against the construction of the court. It is asked by the court, why a transcript should not be evidence to sustain a title of a purchaser under execution ? The answer is, that a purchaser is always bound to shew a judgment and execution ; 12 *Johns. R.* 213 ; 20 *id.* 328 ; 2 *Starkie'e Ev.* 1357 ; and why should he be relieved from doing so in this case ? Besides, the paper by virtue of which the judgment was docketed, is not a *transcript*, but merely a certificate.

The plaintiff below was not entitled to recover, because the defendant was in possession, under a judgment in ejectment, duly entered in a suit commenced previous to the plaintiff's judgment ; the circumstance of the judgment in ejectment being entered on a *cognovit*, given subsequent to the plaintiff's judgment, cannot affect the rule of law on the subject, when, as in this case, it is shewn that it was compulsory, and not fraudulent.

The *deed* from Gridley to Tuttle, although not recorded, was a valid deed as against the judgment of Hills ; the grantor being divested of his title, a *lien* could not attach in favor of the judgment creditor. *Jackson* v. *Post*, 9 *Cowen*, 120. Hills cannot claim any benefit under the *registry act*, for when he obtained his deed Tuttle was in possession of the premises under a conveyance. The object of that act is to give *notice* of a claim to the land ; notice is equivalent to a registry ; and Tuttle being in the actual possession of the premises, no other notice was necessary. 3 *Mass. R.* 573, *App.* 6 *id.* 24, 487, 9. 4 *id.* 637. 5 *id.* 459. 2 *id.* 508.

The supreme court were not warranted in saying that Tuttle was not in possession under the deed ; when he took possession he had the deed of Gridley, and why should he not be considered as holding under it, as well as under his judgment ?

The deed to the plaintiff below was void, because at its execution Tuttle was in possession, holding adversely. *Co. Litt.* 214, *a*. 2 *Black. Comm.* 290. 12 *Johns. R.* 453. 9 *id.* 55. This doctrine applies as well to judicial as to other sales ; otherwise a party might do indirectly what he could not do directly. 13 *Johns. R.* 488.

*J. A. Spencer*, for defendant in error. To render a justice's certificate of a judgment evidence in a *suit on such judgment*, it is conceded that it must appear by the certificate that the justice·had jurisdiction of the person of the party against whom the judgment is entered, and of the subject matter ; but it is not necessary that this should appear in the *transcript*. The entry of a judgment before a justice is in the simplest form, stating little else than the names of the parties in whose favor the judgment is rendered, and the amount thereof ; no record is made up setting forth the cause of action, or embodying the pleadings. With a full knowledge of the mode in which business is transacted by justices, the legislature enact that " it shall be the duty of any justice of the peace on the demand of any person in whose favor a judgment shall have been entered by such justice, to give a *transcript of the same ;*" and after providing that the same may be filed in a county clerk's office, it makes it the duty of the clerk to *enter the judgment* in a book to be by him provided for the purpose, and declares that such judgment, so entered, shall be a lien on real estate. *Statutes, vol.* 4, *c.* 80, *session of* 1818. The duty of the clerk on receiving the transcript is clearly pointed out : the statute proceeds on the assumption that he knows the person giving the transcript to be a justice, and submits its genuineness to his determination. He is the keeper of the appointment of the justices of his county, and has the custody of the rolls of the oaths of office. A transcript thus filed, at all events, is *prima facie* evidence of the judgment. If it be not genuine, if the per-

son granting the same be not a justice, or if the judgment was fraudulently rendered, the party sought to be affected is not remediless. Neither of these pretences were set up on the trial, and imaginary mischiefs ought not to defeat the plaintiff's recovery.

The deed from Gridley to Tuttle, although bearing date in 1817, if operative at all, took effect only from its delivery by the arbitrators to Tuttle in July, 1820. This was subsequent to the plaintiff's judgment. Besides, the plaintiff's deed being first recorded, obtained a preference under the registry act, 2 *Caines* 61. 4 *Johns. R.* 216. 12 *id.* 559. 13 *id.* 371, 471. 4 *Cowen,* 599. Again ; Tuttle, claiming under a deed from a judgment debtor, had not such an adverse possession as would affect a conveyance by a purchaser under such judgment, *Jackson* v. *Collins,* 3 *Cowen,* 89 ; much less would it affect a conveyance under a judicial sale. If the doctrine on the other side be right, it is in the power of a debtor to prevent a sale of his property by his judgment creditor.

The following opinion was delivered :

By the CHANCELLOR. The first objection embraced in the bill of exceptions, is that the circuit judge received an *exemplification* of the transcript and of the entry of the judgment in the book kept for that purpose, by the county clerk, as evidence that such a transcript was filed and such an entry made in his office. As to this point I think the decision of the court below was correct. The transcript and entry were in the nature of a record of certain judicial proceedings which by law were deposited in that office. The exemplification under the official seal of the clerk is as good evidence of the fact that such a transcript is filed, and that such an entry of the judgment is made, as a sworn copy of the same transcript and entry would be, if produced. This point was substantially decided by this court at their last December term, in the case of *The Pacific Insurance Company* v. *Catlett,* 4 *Wendell's R.* 75, where the exemplification of a document filed in the treasury department at Washington, under the seal of that department, was considered good evidence of the fact that such a document was deposited in the office of the register of the treasury. The question as to the legal

effect of that evidence, when produced, more properly arises under the second point raised by the plaintiff in error.

The next objection is that the transcript and entry, if duly proved by an exemplification thereof, were not competent evidence to prove the existence of the judgment for the purposes of this suit. The statute has pointed out the mode of authenticating the proceedings before a justice in ordinary cases, by a certified copy signed by the justice, and a certificate of the county clerk, under his official seal, showing that the person whose name was subscribed, was a justice, and that the signature is in his proper hand-writing. Such a document, or the original entry in the docket of the magistrate, or a sworn copy thereof, might have been necessary, if the purchaser at a sheriff's sale was bound to go beyond the transcript returned into the clerk's office, to prove the right of the sheriff to sell the property. But I concur in the opinion of the supreme court on this question ; which opinion is stated more at length in *Jackson* v. *Jones,* 9 *Cowen's Rep.* 182. The act of 1818, under which this judgment was entered in the clerk's office, *Laws,* 4 *vol. p.* 80, § 9, made it the duty of the justice, on request of the party in whose favor the judgment was rendered, to give him a transcript thereof, which the county clerk was directed to file in his office, and to enter the judgment in a book to be kept by him for that purpose. The statute declares that the judgment *so entered by the clerk* shall from and after that time be a *lien* on real estate to all intents and purposes as if the same had been rendered in the court of common pleas. It is evident that the legislature intended to make the judgment, as entered by the clerk, at least *prima facie* evidence of the right to issue an execution thereon against the real estate of the defendant in such judgment, if not conclusive evidence of the fact in favor of a *bona fide* purchaser under the sheriff's sale. All the justices of the peace in the county are officially known to the clerk, and their commission was at that time deposited in his office, as well as their official oaths. It is not to be presumed that the clerk will file a transcript, and enter a judgment in his office, unless he knows the signature of the magistrate to be genuine and that he is a justice, any more

than that he would file a judgment record in the court of common pleas when he knew the person signing it was not a judge or that the name of the judge had been forged. And I can see no good reason for requiring further evidence of his signature or official character in the one case than in the other. If this transcript was sufficient to authorize the clerk to enter the judgment in his office, and to issue an execution thereon, there was sufficient evidence of the authority of the sheriff to sell, and of the existence of the lien, to enable the purchaser to recover in ejectment.

Neither are we without precedent on this subject. Under the Pennsylvania statute, which is somewhat similar to our own, the supreme court of that state have decided that the correctness of the judgment as entered in the clerk's office cannot be enquired into collaterally, in the ejectment suit brought by the purchaser, although the clerk has actually made a mistake in the entry thereof; that the filling of the transcript makes the judgment a judgment of the court of common pleas for all purposes of proceeding against real estate. *Arnold* v. *Gorr*, 1 *Rawle's Rep.* 223. And the legislature of this state as well as the supreme court has given the same construction to this provision in the act of 1818. *Laws of* 1824, *p.* 297, § 45. 2 *Cowen's Rep.* 596. 5 *id.* 31. The record although not very full and formal must in such cases be deemed sufficient authority to the clerk to issue the execution; and if sufficient for that purpose, it is so *prima facie* to protect the purchaser under the sheriff's sale. See *Doe* v. *Greenlee*, 3 *Hawks' Rep.* 281, and *Lessee of Lanning* v. *Dolph*, 4 *Wash. C. C. Rep.* 724.

The third objection relates to the admission of parol declarations of the defendant in this suit to prove the existence of the judgment. This evidence was clearly inadmissible; but as there was legal proof sufficient to establish the fact, this point becomes unimportant, in the decision of this cause.

The objection, that the demise was laid before the lessor's title accrued by the giving of the sheriff's deed, was valid when made; and would have been fatal had the pleadings continued in the same situation in which they then were; but it was a mere matter of form, as the suit was not com-

menced until the expiration of many months after the deed was given. It being impossible to prejudice the merits of the case by a subsequent amendment, the judge very properly refused to nonsuit on that ground, and left the parties to dispose of the question of form before the supreme court, where the plaintiff had a right to apply for the amendment. The demise in the declaration having been altered to the 17th of January, the record comes up here as though it had been originally laid as of that time. If the declaration is set out at length in the bill of exceptions, containing the demise as it was before the amendment, we must in this court reject it as inconsistent, and not founded on the pleadings as amended. Previous to the act of March, 1809, the bill of exceptions had nothing to do with the judgment record in the supreme court, but was brought directly into this court by the party who tendered the same at the circuit. It was then proper to set out the pleadings at length in the bill ; so that it might appear to have been taken in the same cause in which the judgment was given ; but after the passing of that act, which made it the duty of the circuit judge to return the bill of exceptions into the supreme court with the *postea,* to be passed upon there and to be incorporated into the record, a repetition of the pleadings becomes useless and improper ; and they ought not to be set out a second time in the record of the supreme court which is sent up here on the writ of error. After the record of the supreme court has been actually removed here by writ of error, this court may refuse to award a certiorari to bring up an amended record, but while the record remains before that court they may make such amendments, in their discretion, as the purposes of justice demand. It is not to be presumed the power will be abused or improperly exercised ; and their proceedings, in relation to such amendments, cannot be reviewed on a writ of error—which only brings up the error as amended.

The fifth objection is that there was no title proved in Gridley under whom the lessor of the plaintiff claimed. There was evidence that Gridley was in possession of the premises, claiming them as his own, prior to the giving of the mortgage to Tuttle. This was *prima facie* evidence of title

in Gridley, and sufficient to enable a purchaser under a judgment against him to recover of any one who could not show a better right or prior possession. As the demise laid in the declaration in Tuttle's ejectment suit was long subsequent to that time, the recovery in that suit, and the entry under the same, did not necessarily rebut the presumption of a previous title in Gridley. It was sufficiently proved, in the course of the trial, that the claim under which that recovery was had, was founded either upon the mortgage or the subsequent deed of Gridley. If they were both invalid, and the award was not a bar, Gridley himself might have recovered back the premises in an action of ejectment founded on his previous possession only; and the purchaser under the judgment against him is entitled to the same right. The award cannot bind such purchaser, his judgment was docketed previous to the submission to the arbitrators, and any subsequent agreement of Gridley could not affect his rights.

I am satisfied the statute against buying and selling pretended titles cannot apply to judicial sales. The statute, except as to the penalty, is merely in affirmance of the common law; and that never has been considered as preventing the change of property by operation of law, or by a sale by the proper officer under a *bona fide* judgment or decree of a court having competent jurisdiction to order such sale. It does not come within the mischiefs intended to be guarded against by the statute.

It has long since been settled, and I think correctly, that the deputy who had commenced the execution of the process, by a levy on the property during the term of office of his principal, may proceed and complete the execution thereof afterwards. The giving of the conveyance after the expiration of the time limited for the redemption of real property, is as necessary a part of the duty of the officer to complete the sale, as the putting up the property and striking it off to the highest bidder. An actual removal of the deputy by his principal before the execution was completed, would present a different question.

The only remaining point in this case relates to the unregistered deed from Gridley to Tuttle. This conveyance

bore date long before the docketing of the judgment under which the lessor of the plaintiff derived his title. And if there was either an actual or constructive delivery thereof, at or about the time it bears date, the defendant was in possession, under a legal title to the premises, at the time of the sale to Hills by the sheriff. It is no answer to say that Tuttle was in possession under the mortgage and foreclosure thereon and not under the deed. If a party is in possession of land having two titles, one valid, and the other void or voidable, the law presumes him to have entered under the legal and better title. *Per Washington, J. 4 Wash. C. C. Rep.* 619. If the deed was valid, Gridley was a mere tenant at will to Tuttle, at the time Hill's judgment was docketed, and the suit was then pending to divest even that possession. This tenancy being determined before the sheriff's sale, there was no interest whatever remaining in Gridley at that time on which the lien of the judgment attached, and which could be a subject of sale. If therefore the decision of the supreme court was right in *Jackson* v. *Town,* 4 *Cowen's Rep.* 599, and in *Jackson* v. *Post,* 9 *id.* 120, the unrecorded deed was valid as against the purchaser at the sale. I know the correctness of one of these decisions has been questioned by some members of the profession, and perhaps it may not be necessary for me to express any opinion on that point here; but I find a similar decision was made by the court of king's bench in *Ireland,* in 1822, in the case of *Fury* v. *Smith,* 1 *Huds. & Brooke's Rep.* 735. And in the case of *Warburton* v. *Loveland ex dem. Ivie,* which came before the court of exchequer chamber, in 1828, although the twelve judges were equally divided on another question which arose in the cause, all who expressed an opinion on this subject, admitted that the case of *Fury* v. *Smith* was rightly decided. 1 *Huds. & Brooke,* 623. Where the judgment debtor is in possession at the time of the sheriff's sale, so that he has a possessory right, or an equity of redemption, or any other interest which is the proper subject of a sale and conveyance by the sheriff, I do not mean to be understood as admitting that the purchaser will not be protected under the recording acts, against a prior

unregistered deed or mortgage, of which he had neither actual or constructive notice at the time of his purchase; nor do I understand that either of the cases referred to, go that length. In *Jackson* v. *Town,* the defendant in the execution had sold and conveyed the premises, and had actually abandoned the possession thereof before the recovery of the judgment. If the purchaser in that case even supposed he was buying a good title, yet the debtor had in fact no interest in the land on which the judgment could be a lien, or which could be a subject of sale by the sheriff, on the execution. In *Jackson* v. *Post,* the premises were conveyed previous to the judgment, though the grantor remained in possession; but the purchaser had actual notice of the unrecorded deed at the time of his purchase. He therefore bought nothing but the possession of the judgment debtor, and was not a *bona fide* purchaser of any thing else.

If the subsequent purchaser knows of the unregistered conveyance at the time of his purchase, he cannot protect himself against that conveyance, and whatever is sufficient to make it his duty to enquire as to the rights of others, is considered legal notice to him of those rights. Here Tuttle, the person to whom the unregistered deed was given, was in the actual possession of the premises at the time of the sheriff's sale, and this was good constructive notice to the subsequent purchaser to make it his duty to enquire as to the rights of the person in possession. In *Colby* v. *Kenniston,* 4 *New-Hamp. Rep.* 262, where the purchaser under an unregistered deed was in the open and visible possession of the premises, it was held sufficient notice to protect him against a subsequent purchaser, and to charge the latter with a knowledge of his rights. So in *Norcross* v. *Widgery,* 2 *Mass. Rep.* 508, Ch. Justice *Parsons* says: "This notice may be express, or it may be implied from the first purchaser being in the open and exclusive possession of the estate under his deed." See also *Eyre* v. *Dolphin,* 2 *Ball & Beat.* 301. *Forbes* v. *Denniston,* 2 *Brown's P. C.* 425. *McMecham* v. *Griffing,* 3 *Pick. Rep.* 149. *Malpas* v. *Ackland,* 3 *Russ. Ch. Rep.* 273. *Lessee of Bellington* v. *Welch,* 5 *Binney,* 129,

ALBANY,
Dec. 1830.

Tuttle
v.
Jackson.

*Davis* v. *Blunt*, 6 *Mass. Rep.* 487. *Daniels* v. *Davison*, 16 *Ves.* 254. 17 *id.* 433, *S. C. Allen* v. *Anthony*, 1 *Merriv.* 282. *Taylor* v. *Baker*, *Daniel's Rep.* 80, *note a.* In *Sheldon* v. *Cox*, 2 *Eden's Rep.* 228, Lord Northington, in reference to notices under the registry acts, says there is no difference between personal and constructive notice in its consequences, except as to guilt. And in *Newman* v. *Chapman*, 2 *Rand. Rep.* 100, in the Virginia court of appeals, *Green, J.* holds the same language. Under the Middlesex registry act, 7 *Anne, ch.* 20, the first deed is absolutely void at law, as against the second purchaser even with actual notice thereof, and the party there is bound to seek his relief in chancery. Such was the decision of the king's bench in *Doe* v. *Allsop*, 5 *Barn. & Ald.* 142. But that decision is placed upon the ground that the statute is imperative that the first conveyance shall be void against any subsequent purchaser, and that the words *bona fide purchaser* are not used in the act. Such was also the decision under the first Virginia statute similarly worded; but after the words "for valuable consideration and without notice" were added in a subsequent revision, it then became a rule of law. 4 *Rand. Rep.* 212. *See also* 2 *Bibb's Rep.* 420. By our recording acts the unregistered deed or mortgage is only void as against a subsequent *bona fide purchaser*. The rule of equity here is therefore the rule of law, and whatever would in equity charge the party with notice of the equitable rights of a prior purchaser or incumbrancer so as to deprive him of the privilege of pleading that he is a *bona fide* purchaser without notice, must in a court of law be sufficient to protect the legal rights acquired under the unregistered deed, against the subsequently recorded conveyance.

I think, therefore, that Hills was not protected against the unrecorded deed to Tuttle, provided the same was actually or constructively delivered before the judgment became a lien on the premises, and that the judge erred in deciding that the time of the delivery was immaterial. On this ground alone, I think the judgment of the court below should be reversed, and a new trial granted.

On the question being put, *Shall the judgment of the supreme court be reversed?* the members voted as follows:

For *affirmance*—Senators ALLEN, CONKLIN, HUBBARD, MATHER, and THROOP—5.

For *reversal*—The CHANCELLOR, and *Senators* ARMSTRONG, BEARDSLEY, BENTON, BOUGHTON, DEITZ, McCARTY, McLEAN, OLIVER, REXFORD, SHERMAN, TALLMADGE, TODD, WHEELER and WOODWARD—15.

Whereupon the judgment of the supreme court was *reversed.*