Patterson, J.
This action is brought to foreclose a ■mortgage made by John E. Murphy to the plaintiff on July :23, 1886, and recorded the next day. It is defended by .Margaret Brady, who avers that she is the owner of the ■.mortgaged premises, and that at the time Murphy gave the •mortgage to the plaintiff she was in actual possession as owner; that she purchased the premises in May, 1885, and she contends that her possession under an unrecorded deed was such notice as to put the plaintiff upon inquiry as to her title ; and that had lie made such inquiry he would have discovered her superior right; and therefore she insists that the plaintiff’s mortgage cannot be recognized or enforced in this action. There is nothing in the case to impeach the honesty of either the plaintiff or Mrs. Brady. One of them must be the victim of an atrocious fraud ; and the practical question is, Who shall be the sufferer under all *291 the circumstances of the case upon the application of rules of law which both sides agree to be controlling ?
A somewhat precise statement of facts is necessary to a proper understanding of the situation of the parties litigating. Prior to May 1, 1886, the mortgaged premises belonged to Mrs. Trimble. Mrs. Brady or her husband was a tenant, keeping a shop and living in some rooms in the rear on the ground floor of the house, the building being an apartment house. Sometime before May 1, 1885, Mrs. Brady desiring to purchase the premises employed Michael J. Murphy, as her attorney, to transact the business for her. She intended to buy and supposed she was buying from Mrs. Trimble. On May 7, 1¿85, a deed was acknowledged by Mrs. Trimble conveying the premises to John E. Murphy, a son of Michael J. Murphy, and it is slioyvn in the proof that the latter stated to Mrs. Brady that there were reasons why she should not take a conveyance directly from Mrs. Trimble and that it would be better for her to have the title come through John E. Murphy. , It is satisfactorily proven that Michael Murphy, after being employed by Mrs. Brady and upon receiving from her §6,700 in money, actually procured the deed from Mrs. Trimble conveying the property to his son. A deed was made out from John E. Murphy to Mrs. Brady, dated and acknowledged May 5, 1886, or two days before Mrs. Trimble’s deed to John was acknowledged and delivered. Michael J. Murphy having the conveyance from John in his possession declared to Mrs. Brady that he would take it to be recorded, but he did not do so, and it was not recorded till August 26, 1886. The fair inference from the proof is that this declaration was made to Mrs. Brady early in May, although Mrs. Brady did not actually, as she says upon her cross-examination, see the particular deed until August.
In the meantime, and early in May, Mrs. Brady having-, as she believed, contracted to purchase from Mrs. Trimble, moved her lodgings from the rooms in the rear of the shop to rooms on the second story of the apartment house, which *292 rooms had been occupied by Mrs. Trimble’s housekeeper; that housekeeper, who had had charge of the building for Mrs. Trimble, vacated the premises, and Mrs. Brady, as owner of the property, collected the rents for that month of May, and also for the months of June and July, 1885, and she assumed the full control of the premises. Therefore, it appeal’s that from early in May she was in receipt of the rents and was in actual occupation of a part of the premises and of more than she had occupied as a tenant of Mrs. Trimble before May, and was actually in as a purchaser in fact.
Mrs. Brady is an ignorant person, scarcely able to read. She placed great confidence in Michael J. Murphy, and it is obvious on the whole testimony, that ho was her agent and attorney for all the purposes of the transaction to conduct the negotiations and complete the business for her as well as her attorney to examine the title. In July, 1886, application was made to the plaintiff by a broker for a loan to be made upon the premises to John E. Murphy. The plaintiff caused the title to be examined, and the attorney he employed not only put in official searches, but made a personal examination of the records and found that the legal title stood in the name of John E. Murphy. Everything appears to have been done by the attorney for the plaintiffs that could be required of him, so far as searching the records is concerned, and the result of his examination was that the plaintiff made the loan and took John E. Murphy’s bond, secured by the mortgage first above mentioned. But before making the loan the plaintiff went upon the premises, as he testifies, with a view of looking at them to ascertain the value of the security. It is admitted that the premises were subject,-or would be subject, to a first mortgage for $16,000.
Upon this state of facts it is claimed, as before stated on the part of Mrs. Brady, that she being in possession under an unrecorded deed, the plaintiff had constructive notice of lier rights, and that as he failed to make inquiries which *293 would liave led to the discovery of those fights, especially as he went upon the premises according to his own admission, his mortgage cannot prevail against her.
It is too clearly stated for controversy that possession under an unrecorded deed is constructive notice (Chesterman v. Gardner, 5 Johns. Ch. 29 ; Governeur v. Lynch, 2 Paige, 300 ; Grimstone v. Carter, 3 Paige, 421 ; Brice v. Brice, 5 Barb. 533 ; Tuttle v. Jackson, 6 Wend. 213 ; Williamson v. Brown, 15 N. Y. 354; Brown v. Volkening, 64 N. Y. 76, 82 ; Pope v. Allen, 90 N. Y. 298); but the character of the possession, and the circumstances concerning it, must always be looked into.
Concerning the fact of possession in this case, it is clear that Mrs. Brady was in the actual occupation of some portion of the premises and her tenants of other portions, and that she was, as owner, collecting rents from all the tenants early in May. Does this evidence of possession suffice? The rule which affords a test is well defined. It must be an actual, open, visible and exclusive and not a mere constructive possession (Webster v. Van Steenburgh, 46 Barb. 211, 215 ; Tuttle v. Jackson, 6 Wend. 213, 226; Troup v. Hurlbut, 10 Barb. 354; Pope v. Allen, 90 N. Y. 298).
The possession of Mrs. Brady was of the character referred to in the cases last cited. This was an apartment house occupied by a great many tenants. The housekeeper who seemed to have been the agent of the former owner went away. Mrs. Brady made all the tenants aware of her proprietorship, and at once began to collect and did collect as owner the rents from all these tenants. This was about as complete and ample a taking of possession, when coupled with actual residence on the premiees, as could well be proven, and that possession was exclusive and continuous from early in May until long after Phelan took his mortgage. John E. Murphy never was in possession. lie never collected rents and his title was a paper record title only at the time the plaintiff took his mortgage.
But as this case is presented the simple fact of possession *294 by Mrs. Brady is not sufficient, standing alone, to defeat the plaintiffs mortgage. It must be possession under a contract or a deed. Mrs. Brady originally took possession under what she supposed to be a contract, but no written contract is in evidence. Her possession under the deed must be from the time at which she was apprised by Michael J". Murphy that he had the deed from John E. Murphy, and would take it to be recorded. To be in possession under an unrecorded deed, that deed must have been delivered, and Mrs. Brady’s case must stand upon the theory of her being in possession, at the time the plaintiff took his mortgage, under the unrecorded deed from John E. Murphy. She knew that she was to take by conveyance from him, and his deed, therefore, was to be the immediate and direct muniment of her title, and a delivery of that deed must be proven. It is not necessary that the delivery of a deed be made to the grantee personally. It may be delivered to the agent of the grantee or even to a stranger for the grantee’s benefit, although no deed can take effect as having been delivered until such act of delivery has been assented to by the grantee, or until something has been done etjuivalent to an acceptance of it. Therefore it is said in the books that the acts of delivery and acceptance must be concurrent.
In this case the deed was executed by John E. Murphy, and was executed on May 5, and was delivered into the possession of Michael J. Murphy, the attorney of Mrs. Brady, and he, as Mrs. Brady swears, took it to her and stated (although she does not actually recollect that he exhibited the paper to her) he would have it recorded. There is no contradiction in her testimony as to the date at which she was told this by Michael J. Murphy. She did not actually see the paper until August, but she was told by Murphy in May that he had it, and the date of the acknowledgment of the deed by John E. Murphy shows, coupled with other testimony, that he then declared he had it, and that it was actually in his possession at that time. He was *295 tlie proper person to receive it for her, and his receipt of it, as the agent of Mrs. Brady, was the acceptance by Mrs. Brady through her agent of that deed. The instrument once in his hands was delivered to her.
But it is claimed by the plaintiff that the date of the deed from John E. Murphy to Mrs. Brady, and its acknowledgment on May 5, 1886, is significant on the question of delivery, because the deed from Mrs. Trimble to John E. Murphy was not delivered until May 7, 1886. But that is quite satisfactorily explained by Mrs. Brady. She placed .her last payment of $5,500 in the hands of Michael J. Murphy, in Church street, about May 1, and it was about a week after her last payment that he came to her and said, he would put her deed on record. There is no evidence to show that this was actually said before the delivery of Mrs. Trimble’s deed to John E. Murphy, and the more date of May 5, can have no significance against the general tenor of the evidence to the effect that he informed Mrs. Brady that lie had ¡lie deed in his posscsssion at a time her testimony fixes, about May 8.
I am compelled on the evidence to reach the conclusion that Mrs. Brady’s possession under the unrecorded deed was notice to the plaintiff and put him on inquiry. The inquiry must necessarily relate to her title. He was bound to prosecute such means of obtaining information as would tend to a discovery of the actual facts of possession and consequently of title, and if he did this in good faith he certainly would be protected. But it is not claimed that any such inquiry was made by the plaintiff, as the investigation made on his behalf was limited to Murphy’s title as derived from Mrs. Trimble. He went on the premises, but never asked any questions as to ownership or possession. I exclude from consideration Mr. Brady’s testimony. The recording acts are not protection against the rule of law which has been laid down by abundant authority, as above stated. Persons relying on those recording acts are dealt with very liberally by the court, and it will go very far to uphold a *296 title taken under tlieiv sanction, but in this case there was no inquiry whatever made as to the title of Mrs. Brady, and under the proof before me, to hold that the plaintiff’s mortgage is enforceable, would simply be to ignore the rule of law which has been established, and is constantly recognized and applied by the courts in cases of this character.
There must be judgment dismissing the complaint upon the merits; but as the matters of defense appear to have been unknown to the plaintiff,, and he was certainly justified in bringing the case before the court for its decision upon the equities, I shall not allow costs against him.
Note on Possession as Notice.
The leading cases on this subject are Tuttle v. Jackson, 6 Wend. 213, and Parks v. Jackson, 11 Id. 442, in the latter of which cases it was held that the actual possession of the purchaser under an executory contract who has made part payment and made improvements, makes him a necessary party to a bill to impeach the title of his vendor; and if ho be not made a party, the filing of a notice of Us pendens on such a bill will not avail to give the purchaser under the decree good title as against such possessor.
This litigation involved the title to considerable tracts of land in the western part of the State, which had been sold to farmers under long executory contracts calling for the making of improvements and for payment by installments, and not giving a right to conveyance until payment should be completed. A flourishing village grew up upon the lar.d thus contracted for; but in the meantime, and before conveyances had been made by the vendor, a creditor of the vendor filed a hill in chancery to set aside the vendor’s title for alleged fraud. Ho gave no actual notice to these purchasers iti possession, hut filed a notice of lis pendens iu the office of the register or clerk at Albany. Meanwhile, during the long pendency of this suit, the purchasers in possession completed their payments and took their deeds, in ignorance of the pendency of the litigation as to their vendor’s title; the creditor finally prevailed in his suit, and caused the land to be sold under his decree, and the purchaser now brought ejectment against those in possession.
The supreme court deeming themselves bound by Jackson v. Andrews, 7 Wend. 152 (where it was held that he who purchases pending a suit is bound by the judgment) held that the same rule applied notwithstanding the contract to purchase was made before the pendency *297 of the action, and the purchasers meanwhile had made payments and taken absolute deeds in fee in ignorance of the suit.
In the court of errors, the chancellor’ delivered a careful opinion supporting the decision below; and up to that time, wo believe that there had never been a case, in which a majority of the senate had disagreed with the chancellor, when he was in favor of affirming a unanimous decision of the supreme court.
Mr. Seward, then the youngest member of the senate, was impressed with the hardship and injustice of the case, affecting as it did his neighbors around Auburn; and incidentally learning from other members of the senate that they would bo inclined to reverse the decision but for inability to answer the close legal reasoning of the chancellor, he drew up an opinion to the contrary which is a masterly specimen of judicial logic, dealing with precedents so as to make them serve the-justice of the result. His opinion commanded the assent of the entire senate. lie says in his autobiography (p. 144) “ It was a thrilling scene when the cause was decided. The chancellor read a strong opinion in favor of affirmance, and sat down by the side of the judges, all of whom looked a unanimous concurrence. Senator Levi Beardsley, sitting by me, said, ‘Now, Seward, call out the militia.’ I, the youngest, not only of the lawyers, but of all the senators, read the opinion which I had prepared, all the other members remaining silent. The roll was called, and the vote stood : For affirming the judgment of the supreme court, the chancellor; for reversing it, Mr. Seward and all the other members of the court.” lie well adds, “It is due, perhaps, to the legal profession and the legislators of the State to say that this decision, so equitable and so beneficent, has over since been acquiesced in. and continues, unshaken and unquestioned, as a conclusive and final precedent.”
The lis pendens statute in its present form (Code Pro. § 132, as amended in 1866; and in substance continued in Code Civ. Pro. § 1671), is as follows :
“ Where a notice of the pendency of an action may be filed, as prescribed in the last section, the pendency of the action is constructive notice, from the time of so filing the notice only, to a purchaser or incumbrancer of the property affected thereby, from or against a defendant, with respect to whom the notice is directed to be indexed, as prescribed in the next section. A person, whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if ho was a party to the action.”
Soon after this act was passed in 1SC6, the question arose whether this clause did not supersede the rule iu Parks v. Jackson, but it was *298 soon held in Lamont v. Cheshire (65 N. Y. 30), that the clause restricting the binding effect of the proceeding “to the same extent' as if he were made a party ” saved the right of one who was in possession under an equitable interest before the commencement of the action, but who failed to record his deed until notice of Us pendens was filed - and that the title of a purchaser so holding under a prior unrecorded conveyance, if made a party, could not, under such circumstances, be affected when plaintiff, at the time of filing notice, had actual or constructive notice of his rights.
Character of possession.] Actual residence upon the land is not required to effect constructive notice of title. Thus in the case of meadow land, which was enclosed with a fence and a hedge at the time of the purchase, where the grantee used the land continuously thereafter for growing hay and pasture, cut the grass and carried away the hay every year, repaired and reset the fence, and trimmed the hedge, cleared the land from debris whenever occasioned by a freshet, and frequently went upon the land to inspect its condition, this was held sufficient possession to protect him against the lien of a judgment against his grantor rendered after his deed but before its record. Hodge’s Executors v. Amerman, 40 N. J. Eq. 99.
The owner of premises upon which several houses were in process of construction, contracted in consideration of materials furnished by defendant, to deed to him one of the houses,-and under the agreement, but before the completion of the house, surrendered the kejns thereof to the defendant, who thereafter made certain alterations and improvements in the house. Eeld, in an action to foreclose a mortgage, given by the builder upon the house in question to the plaintiff, that the defendant’s possession was constructive merely, and not sufficient to operate as a notice to the plaintiff of his rights under the contract. Brown v. Volkening, 64 N. Y. 76.
The possession which will be sufficient to put a purchaser from the person having the record title upon inquiry, and affect him with notice of the possessor’s rights and equities, must be actual, open and visible,' and not equivocal or consistent with the title of the apparent owner of record. Hence, in ejectment by a purchaser from the record owner, who was also in possession of the premises at the time of the purchase, —Eeld, that he was not affected with notice of the claim of a joint occupant with his vendor, as there was nothing to indicate that his occupation was not subordinate to the vendor’s, or suggest hostility to the record title. Pope v. Allen, 90 N. Y. 298.
Where two persons are in concurrent possession of land, one of whom has the record title, the other is presumed to hold under him, and his possession is not therefore constructive notice of equities. 10.
*299 See, also, Seymour v. McKinstry (N. Y., June, 1887) 8 Centr. Rep. 73; and Farmers’, &c. Nat. Bank v. Wallace (Ohio, June, 1887) 13 Northeastern Rep. 439.
Plaintiff, being the owner and in possession of the north part of a lot of two hundred and ten acres, gave an absolute deed thereof, and the grantee thereupon went into possession of the remaining half of the lot. The deed was given under an agreement for a re-conveyance of the north half of the lot to the grantor, which was not recorded,— Held, that purchasers from the grantee of the entire lot were affected with notice of plaintiff’s rights under the agreement to re-convoy, they having known of his possession and made no inquiries as to its nature or extent, supposing that he was a tenant of their grantor. Grimstone v. Carter, 3 Paige Ch. 421.
The record title to premises stood in the names of A. and B. jointly. A. and B. were in partnership in the business of quarrying sand for the manufacture of glass, and they quarried and used the sand upon the premises.—Held, that a mortgagee of A.’s undivided interest in the premises was not affected with constructive notice that the lands were partnership assets subject to the firm debts, and that his mortgage was good against the grantee of a receiver of the partnership. Hammond v. Paxton, 25 Northw. Rep. 321 (58 Mich. 393).
Possession by mortgagor’s wife, under a prior unrecorded conveyance from her husband through a third person, is not notice to subsequent purchasers of the title under which she claims. Cary v. White, 7 Lans. 1.
To operate as notice, possession of real property should be inconsistent with the title sought to be established. Thus, where the owner of realty conveyed it to B., taking back a lease for life and retaining possession, and, before the lease was recorded, A. gave a mortgage on the property to C., who inquired of B. as to liens thereon,—Held, that the owner’s possession was not such as to give notice of his rights in the premises to C. Staples v. Fenton, 5 Hun, 172.
In Troup v. Hurlbut (10 Barb. 354), the rule that open and visible possession of premises by a purchaser under an unrecorded deed is sufficient notice to protect him against a subsequent purchaser, and to charge the latter with knowledge of the occupant’s rights, was applied in an action for damages for overflowing the land by a mill-dam in the possession and use of the grantee under an unrecorded deed giving him the right to overflow the lands in question.
Consequences of notice.] If one is “ put on inquiry ’’ he is subjected to all the consequences of the transaction, which he should have inquired into, as its facts afterwards appear. Dunn v. Hornbeck, 72 N. Y. 80 ; aff’g 7 Hun, 629.
*300 When a person other than the vendor is in possession of land, the purchaser has constructive notice of the rights of the possessor, and takes the land subject to all his equitable claims.—So held, sustaining the right of the person in possession to set aside a prior convejumce of the premises by him, procured by fraud. Brice v. Brice, 5 Barb. 533.
Notice to a purchaser of the existence of liens on the property, is sufficient, when explained, to charge him with notice of all incum- ^ brances which inquiry would have disclosed. lie is then not a bona fide purchaser, although the particular instrument of lien has not been brought to his actual notice. Reed v. Gannon, 50 N. Y. 345 ; rev’g 3 Daly, 414.
Occupancy of land by persons holding a contract for its purchase, is not constructive notice of the contract. Trustees of Union College v. Wheeler, 61 N. Y. 88; aff’g in part, 59 Barb. 585 ; s. c., 5 Lans. 160.
The possession of a tenant is notice to a purchaser of the reversion, of the actual interest of the tenant, and of the extent of that interest; and the purchaser is bound to admit every claim of the tenant which he could enforce against the vendor. Chesterman v. Gardner, 5 Johns. Ch. 29.
The rule that notice sufficient to put a person upon inquiry and failure so to do where information is easily accessible, is equivalent to actual notice, was applied in foreclosure in favor of an unrecorded mortgage for the purchase money against a second mortgagee who knew that th.o price had not been paid in full, and that the purchaser was without means and made no inquiries of the latter. Ellis v. Horrman, 90 N. Y. 466.
In an action by a purchaser of premises to restrain the foreclosure of an unrecorded mortgage by the prior owner, the referee having found upon a trial of the cause that the plaintiff had no actual notice of the existence of the mortgage, but had “ sufficient information or belief of the existence of said mortgage to put him upon inquiry, before he purchased and received his conveyance of the premises in question ; and that he pursued such inquiry to the extent of his information and belief, as to the existence of the said mortgage, and did not find that such mortgage existed, or had been given,”—Held, that it was to be presumed either that the purchaser had made inquiry and ascertained the extent of the defendant’s rights under the mortgage, or had been guilty of a degree of negligence which would preclude him from being considered a bona fide purchaser; but that this presumption might be repelled by proof that he failed to discover the mortgage notwithstanding the exercise of due diligence on his part, and in that case would be entitled to the relief sought. Williamson v. Brown, 15 N. Y. 354.